### R. WILLIAMS AND ANOTHER v. THE STATE.

1. To constitute the crime of theft there must be an attempt to trespass on another's personal property, and the further intent to deprive the owner of his ownership therein. The offense is composed of the act of trespass and the superadded intent to steal.

2. Wherever the right of property has been obtained, though fraudulently, an indictment for theft cannot be sustained. The case of White v. The State, 11 Texas, 734, cited.

3. See the opinion of the court in this case for the law of theft when the property passed into the possession of the accused with the consent of the owner. In such cases the felonious taking is not the act by which the possession was obtained, but is the taking of the property from the special custody which, by the consent of the owner, had been entrusted to the thief.

APPEAL from Fort Bend. Tried below before the Hon. L. Lindsay.

The opinion states the case.

*Gustave Cook, H. B. Waller, Cook & Peareson,* and *Calder & Davidson,* for the appellants.

*Wm. Alexander,* Attorney General, for the State.

EVANS, P. J.—At the November term, 1870, the appellants, Williams and Floyd, were indicted and convicted of theft, and sentenced to five years imprisonment in the penitentiary.

The testimony is in substance as follows : Williams and Floyd, with one Jack Paxton, inveigled Ward, the prosecutor, to bet with Williams ten dollars against a watch on a gambling trick, or device, called " pigeon." Ward, not having the money, put up his mare for the ten dollars ; and the watch and the mare were delivered by the respective owners into the hands of an accomplice, who acted as stakeholder. On the development of the trick, Williams claimed that he had won, and the stakeholder delivered

to him, with the consent of Ward, the mare and the watch.
Williams then mounted the mare and started to ride off; Ward
insisted that he should remain until he could go a short distance
to borrow ten dollars to give him in place of the mare, which
belonged to his wife.   Williams paid no attention to Ward's re-
quest, but rode the mare off and kept her in the neighborhood
until she was taken out of his possession by legal process.

On the trial in the court below the judge charged the jury that
" any pretext which is fraudulent, and which was intended to de-
ceive, in order to acquire the possession, and its conversion and
appropriation to the use of the takers, by virtue of such pretext, with
the intent to deprive the owner of the value, and it was so appropria-
ted, constitutes theft; nor is it any excuse in law that the owner and
the taker were striving by fraudulent pretexts to deceive each
other.   Either party, if successful in such mutual efforts to de-
ceive, would be guilty, under the law, in so taking the property of
the other."

This charge is erroneous and misleading.   There is no evidence
in the statement of facts to sustain the verdict.   The essential
ingredients of theft are wanting.

The testimony shows that Ward bet and lost on the swindling
device either ten dollars or the mare, and that he placed the mare
in the hands of the stakeholder, either as the thing bet, or as a
pledge for the ten dollars.   If the mare was the thing bet and lost,
and Williams took the possession on the claim of having won the
stake, then theft could not have been committed by Williams of
this property, for the reason that Ward, in this case, parted not
only with the possession, but with the right of property.

Wherever the *right* of property has been obtained, though
fraudulently, an indictment for larceny does not lie.   (2 Wharton's
Criminal Law, 1849, 1850.)

For a clear exposition of this principle see Mr. Justice Lips-
comb's opinion, in the case of White v. The State, 11 Texas, 734.

XXXIV—35

If, however, Ward only staked the mare for the money bet, the fraudulent acts in obtaining the possession would not constitute the offense of theft, unless Williams had afterwards embezzled the property. (Wharton on Criminal Law, 1847.)

To constitute this offense there must be an attempt to trespass on another's personal property, and the further intent to deprive the owner of his ownership therein. Larceny is composed of the act of trespass and the superadded intent to steal. (Bishop's Criminal Law, 366.)

The *trespass* which is essential to constitute theft, in the case of a bailment, is not the *act* of taking the possession, for that was with the consent of the owner, but it is the after act of taking and embezzling the property itself.

A common example cited in the books, to illustrate this principle, is where a thief, with *animus furandi*, obtains the possession of a horse with the consent of the owner on some pretence of hiring or borrowing, and then, without the knowledge and against the consent of the owner, takes the horse in another direction, with a view of appropriating the property to himself.

The trespass which, in this class of offenses, completes the theft is not the act of taking the possession of the property, for that was with the consent of the owner, but it is the act of taking the property from that special custody which had, by the consent of the owner, been entrusted to the thief.

For these reasons the judgment is reversed and the case remanded.

Reversed and remanded.