## JIM HILL v. THE STATE.

### No. 1459.   Decided November 18th, 1896.

**Continuance—Diligence.**

An application for continuance, for a witness who resides in the town where the trial is to take place, is not sufficient which does not show that additional process was asked for when it was ascertained that he was absent or that the witness is sick or in such condition that his attendance could not be secured; or, if such was the case, that he had left town or fled without the knowledge or consent of applicant. The facts which would excuse the use of further diligence must be shown.

APPEAL from the District Court of Waller. Tried below before Hon. T. S. REESE.

Appeal from a conviction for burglary; penalty, two years' imprisonment in the penitentiary.

George Williams testified in substance, that appellant and witness broke into and entered Hauser's store together, on the night of February 8th, 1896. That appellant and witness went up to the supper at the lodge hall together at about 9:30 p. m. o'clock, and when supper broke up they went to the passenger depot, and afterwards broke in the store. That appellant is the man that was shot at by Tucker Pinckney in Hauser's store. That appellant, as soon as shot was fired, run out of the window and escaped. Tucker Pinckney, Hauser and others came in the store and arrested witness and took him to jail, where he afterwards identified appellant as his companion in the commission of the burglary. Witness did not commit the burglary of his own free will. Appellant told witness that if he (witness) did not join him (appellant) in the commission of the burglary, that he (appellant) would commit the burglary and tell the officers that witness did it. And witness fearing appellant would put said threat into execution, joined in the burglary. Witness and appellant did not break open any store other than Hauser's.

Tucker Pinckney testified in substance: That at about 2 o'clock on the night of February 8th, 1896, witness looked in through the front window of Hauser's store, and saw a white man or a yellow negro in said store. A light was burning. Did not recognize the man as being appellant. Knows it was not George Williams. Witness shot. at the man. Shelburne, Wheliss and witness went around to the window that was broken open. Shelburne went after Hauser. Wheliss stood guard at the window. When Hauser came we all went in the store and found George Williams in there, and arrested him, and took him to jail. And about 4 a. m., or 4:30 a. m. o'clock, J. C. Lipscomb, R. R. Mc-Dade, E. Hauser and witness went down to defendant's grandmother's house; went over the fence at the front gate, which was locked. Lipscomb went in the house and arrested defendant and brought him out through the front gate and took him to jail. We got several other ne-groes to go up to the jail with defendant and stood them up in a row in front of George Williams, who identified defendant as being the man who went into Hauser's store with him.

E. Hauser testified to the venue; his ownership and possession of the store, and his non-consent to the breaking open thereof. Witness' testimony as to the arrest of George Williams and of defendant, and the subsequent identification of defendant by George Williams, is substantially the same as Tucker Pinckney's. When witness and the other named parties went to defendant's grandmother's house and arrested defendant, Maria Hughes, Tabitha Scott and Harriett Scott were there.

J. C. Lipscomb testified as to arrest of defendant, and his subsequent identification by George Williams, substantially the same as Tucker Pinckney's.

Joe Gill testified that he saw defendant and George Williams together

about 9 o'clock on the night of the burglary. They were standing together on the sidewalk in front of Green's store; did not pay particular attention to them; just looked at them when I walked by. It was dark. Know defendant well. Had seen George Williams only once before.

Richard Keuneke testified that he saw appellant and George Williams at a supper at the lodge hall. A crowd of some fifty or more were present, and appellant and George Williams were in the crowd. Did not see them speak to each other. Don't know whether they knew each other or not. Both of them were at the hall until the supper broke up, about 11:15 or 11:30 o'clock. Witness was door-keeper. Appellant came to the hall about 9:30 p. m. o'clock. He came alone.

Jim Smith testified, in substance, that between 12 and 1 o'clock on the night of the burglary, he saw appellant and George Williams together. They were sitting down in the passenger depot waiting room. It was just before the 1 o'clock passenger train comes.

Clint Shelburne testified, in substance, that he was with Tucker Pinckney when the latter shot at the man in Hauser's store. As soon as Pinckney shot, witness run around to the back yard and found the window broke open. Did not see anybody running away. The window is thirty or forty feet from back end of store, and opens into back yard, which yard opens by gate into alley. Was with crowd that went into Hauser's store and found George Williams. About daybreak, witness and Pete Binford took the hounds to the window that was broken open and put them on the trail, where I found the pistols, near the cistern. They struck a trail there and run it out through said gate in the alley, thence down the alley, around Shindler's mill; thence around where the Presbyterian church burned down; thence down the street and across to appellant's grandmother's house. We had three dogs. One old dog and two young ones about ten months old. The ring-necked one (one of the young ones) seemed to keep the trail better than the other two. She trailed slower than the others. The other two ran about a good deal. The ring-necked one ran up to defendant's grandmother's front gate; the other two ran up to Allen Freeman's front gate. I cannot say which dogs were on the trail, if any were on a trail. Allen Freeman is a yellow negro man. Is almost white. His house and appellant's grandmother's house are side by side; their front gates being twenty-five or thirty yards apart. Binford and witness were thirty or forty yards behind the dogs. We went up to appellant's grandmother's front gate, then the other two dogs came to appellant's gate, and all the dogs began jumping upon the gate and fence. Several women were standing at the gate and in the yard when we came up. Appellant had been taken to jail by Lipscomb and others.

*J. D. Harvey*, attorney for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of burglary, and given two years in the penitentiary, and prosecutes this appeal. The appellant in this case made a motion for a continuance, which was over-ruled, and made a motion for a new trial, based on the same grounds contained in his motion for a continuance, which was also overruled; and the correctness of the holding of the lower court is thus brought before us. The motion for a continuance is predicated on the absence of Harriett Scott. The absent witness was the grandmother of appel-lant. She lived in Hempstead, where the trial took place. Defendant lived with her, and his alibi is predicated upon the theory that he was at home, at his grandmother's house, when the alleged burglary oc-curred. Two other witnesses testified that they were at the house of Harriett Scott during the time the burglary is said to have occurred; that they were there waiting on said Harriett Scott, who was ill at the time. Concede that the testimony of said Harriett Scott was material. The question then arises, does the application show sufficient legal diligence? The application in this respect shows as follows: That the subpœna was issued on the 17th of February, 1896, and served and executed on the same day on the witness, who is shown to have lived in the town of Hempstead, where the trial occurred. The trial took place on the 21st day of February, and court adjourned on the 29th of February. The motion, which was filed on the 21st of February, showed that the wit-ness had not hitherto disobeyed the subpœna. The application stated, in formal terms of the law, that the attendance of said witness could not reasonably be secured by a postponement of the trial to some future day of the term. No process was asked for the witness on the day when said case was called up for trial, and, on the overruling of the said motion, none was sued out. Does this show sufficient diligence? Ordinarily, to complete the allegations of diligence, an application of this character should show, where the witness lives in the same town, and is easily accessible, and no additional process is asked, that the wit-ness is sick, or in such condition as that his attendance could not be secured, or, in some cases, has left the town, or fled without the knowl-edge or consent of the applicant. Nothing of this kind is shown, and, so far as the application is concerned, it shows that the witness was still in the town of Hempstead, easily accessible, and during the progress of the trial, by the issuance of process, could have been secured. If ap-pellant had asked a postponement, and obtained an attachment, evi-dently the attendance of the witness could have been procured. He states, however, that a postponement would not have secured the wit-ness. Upon what ground he made this statement we do not under-stand. As above stated, he should have alleged the facts which would excuse him from the use of further diligence. But, as the record pre-sents the question to us, the least diligence would have secured the at-tendance of the witness. The application, when all the circumstances are considered, is quite suspicious, and we believe that there was no error in the court rejecting it. We have carefully read the testimony

introduced by the State for the purpose of corroborating the accomplice, George Williams. Without any discussion thereof, we are of opinion that it is sufficient. The judgment is affirmed.

*Affirmed.*