## C. W. POWELL v. THE STATE.

No. 2664.  Decided November 19, 1902.

**1.—Theft by Obtaining Money on Worthless Check—Evidence.**

On a trial for theft in obtaining money upon a worthless check or draft upon a bank, where the indictment charged theft by false pretense, it was competent to prove, as showing the good faith of defendant, that he had credit and money at the State National Bank of Waco, although he might have been understood by prosecutor to have stated that his money and credit were at the First National Bank of Waco.  There being no such bank as the State National Bank of Waco would not render the evidence inadmissible.

**2.—Same—Charge.**

On a trial for theft by obtaining money under false pretenses, where the State had proved by the prosecutor that, at the time defendant was arrested, defendant was getting ready to go with him to Waco to get the money to repay him, the court should have given a special instruction re-

Vol. 44 Crim. Rep.—18.

quested, to the effect thât the jury should acquit if they believed from the evidence that defendant acted in good faith in borrowing the money.

**3.—Same—Indictment.**

Defendant, if guilty of any offense, would not be guilty of theft where the evidence showed conclusively that the prosecutor had agreed to part with his money and the exchange on New York which he let defendant have; but, in this case the evidence suggests, that defendant might be guilty of either theft or swindling, and he should be prosecuted under an indictment containing counts to be submitted to the jury both for theft and swindling.

Appeal from the District Court of Tarrant. Tried below before Hon. Irby Dunklin.

Appeal from a conviction of theft by obtaining money, etc., by false pretenses; penalty, three years imprisonment in the penitentiary.

The indictment charged appellant with the theft, by false pretenses, of money and New York exchange from John L. Barlow.

John L. Barlow testified: "My name is John L. Barlow. I was in Fort Worth, Texas, on the 26th day of March, 1901. I came here from Stephenville, for the purpose of buying a ticket to California. I know the defendant. I first met him at a restaurant here in Fort Worth; there were several people in front of the restaurant on the sidewalk at the time I got into a conversation with the defendant and others about my trip to California. I was going to Sacramento Valley. I went into details about what I had heard about California. Defendant said if my description of the country was correct it was a fine place and he would like to make an investment there himself. I told defendant I would get a basket of fruit and lunch to save expenses. He suggested going with me to get the basket. We went and got the basket and then to a restaurant and I ordered 60 cents' worth of lunch to put in the basket. Defendant was very kind all the time and suggested that we see the city, and we started. While along the sidewalk, defendant said he had just sold a car load of stock for $1600 and sent the money to Waco. He asked me to have something to drink. I said no, I never did such a thing; but after a while he treated me to a soda water in a saloon; there was a photograph in the saloon which attracted our attention. The defendant asked the barkeeper, or some one who was present, when the match was going to come off with the gloves. The barkeeper answered, 'In a few minutes—upstairs.' We stepped out doors and defendant asked me if I wanted to see the boys practice. We went a little south to the corner of same, and went upstairs. We turned in a room where some men were playing cards. Defendant asked how long it would be until the boxing match began, and one man said, 'In about fifteen minutes.' Defendant then asked the men if he could enter the game; they said yes, and defendant bought two dollars' worth of chips and began to play; he won several times, and seemed very lucky. Defendant asked me to stack his chips for him, which I did, placing twenty in a stack. In a few minutes a hand of cards was thrown in front of me. There were already three men playing, but I did not take the hand of cards. They then dealt me out another hand, which was four aces, and he discarded his hand and picked up mine and played it, and

won with my hand.  Then they dealt again, and defendant again discarded his hand and picked up mine.  A good deal was said about the game that I did not understand.  Defendant bet all the chips he had in front of him on this hand, and asked me for $2.  I let him have it.  He bet in the pot and was raised by some of the other men, and he then asked me for $10, which he wanted to bet on his hand.  I told him I was not acquainted with him, and could not let him have that much.  He then showed me a bank book showing a deposit of $110, one deposit for $50 and one for $60, making the $110.  To my best recollection this deposit was in the First National Bank of Waco, Texas.  He said he had that much in the bank which he had not drawn on.  He said he did not have his check book with him, and after I had made up my mind to let him have the money, I told him I had some checks on my bank at Gainesville.  He asked if I would cash the checks, and I told him yes.  I gave him a check on the Red River National Bank of Gainesville, and he was to erase the name of my bank and substitute his before he filled out the checks.  The bet was raised to $50.  He tore out another check and made it for $50.  The manager of the game and defendant got in a conversation about whether three men could play the game out, and they finally decided they could.  They then told me to pick up the hand in front of me, and I told them I was not playing the game at all.  I then picked up my hand, which was three aces and a pair of tens, and I asked the defendant if that was as good a hand as the four aces I had just held, and he said yes, it beat anything except a flush; and on account of some cards already being out, to which defendant called my attention, he said it was impossible for a better hand than mine to be out.  I was then satisfied and let him have $50.  Defendant said he would return the same $50 to me in a few minutes.  About that time the bet was raised to $100.  I then gave defendant another check, which defendant filled out for $50.  Both checks were given to the manager and put in the drawer, and I gave the defendant $50 more, which was all the money I had.  The bet was again raised and I told defendant I had no more money, but had New York exchange for $300.  The bet was immediately raised to $400.  There was some discussion as to whether the exchange was good or not, and we called a man upstairs to see if it was good, and he said it was; and I then indorsed it and gave this to defendant and he bet it in the game.  He then wrote me another check for $350; this and the other $50 check covered the $400, and this check also was put in the drawer by the manager.  During the time betting was being done, defendant had me to handle the hand that was in front of me.  I repeatedly told him that I would turn the hand up, but was not playing.  Then defendant asked to see the checks, to see if he had indorsed the checks he had given me, and while he had them in his hand they said, "All ready."  I turned up the hand in front of me, and the defendant said, 'We have won,' and started to rake in the chips and checks and money, and a man they called the doctor said, 'Hold on; I have a hand that beats that,' and showed down four sevens.  Defend-

ant dropped back in his chair with his hands over his face and said, 'I am ruined.' I never saw my checks after they went into the drawer. I asked the manager for the checks and he said defendant had just torn them up. Defendant said that he thought we had won, and did not need them and could give back checks and money. I asked him to give me duplicate checks and he refused, but said he would go to Waco with me on the way to California, and get me my money, as he did not want the bank to know he had been gambling. I began to pick up the pieces of checks off of the floor, and all I got I gave to the county attorney. Before I picked up the checks off the floor, I told the defendant I did not have money to go to Waco on, and Mr. Galloway cashed a $10 check for me. I turned the pieces of checks over to Mr. Lattimore before the examining trial. [Here the county attorney, over defendant's objection, introduced the pieces of checks in evidence, which said checks and pieces of checks are hereto attached and marked 'Ex. A,' and made a part of this statement.] After this I went with defendant and he and I walked around town waiting for the train to start to Waco, and I told him I wanted to go to see my sister and put her on the train to go home to Gainesville. On the way to the depot, where my sister was, we stopped in a saloon known as the Two Sams Saloon; defendant there telephoned to a woman, and she came in and defendant ordered the drinks; he and I took lemonade and the woman took beer; defendant went out, leaving the woman and me in the room together. There was nothing indecent between me and the woman; defendant and I then left and went to the Texas & Pacific depot, and I introduced defendant to my sister and went with her to the Santa Fe depot. Defendant then said that he was sick, and went up between the cars, and when we came out he got in the bus, claiming to be sick. My sister came and got her pocketbook. The defendant and I then started up town. We walked around until we reached Main street; it was then getting dark, and before going far we met a policeman, who asked me if my name was Barlow, and if I hadn't lost any money. I said yes, defendant owed me —— he had gotten from me on checks. Defendant was then arrested by another policeman and taken away. My money and exchange given to defendant was $100 in greenbacks and $300 in New York exchange. The money I gave defendant was the $100 currency of United States. I never saw the money again. All this occurred in Tarrant County, Texas, March 26, A. D. 1901."

Cross-examined by defendant: "Defendant told me he had sold stock and sent the money, $1600, to First National Bank, at Waco, and showed me a bank book showing two deposits. I wrote my name and address in the book which he showed me, but can not be sure that the book which is now shown me is the same, but the signature is mine. Defendant said he sent the money down to Waco. The checks written by defendant were in my hands a little bit. They were to go in the drawer and I was not to keep them. I don't remember to whom I handed them. It was agreed around the table that they should go in the drawer of the

manager. The money and exchange was not bet by me, but bet on the hand in front of me, and I did not tell any officer that I had bet and lost my money. When the defendant and I were in the wine room with the woman, he told her that he owed me $400, and was going with me that night to Waco to get the money to repay me. The woman sat down on the sofa between me and the defendant. Defendant left the wineroom at one time and she threw her leg over my leg, and I put my right hand on her leg and my left arm around her waist. I think she told me her price was $3. I don't think I was with her in the wineroom exceeding fifty seconds. I never went to Waco nor presented the checks any where for payment."

Redirect by State: "Defendant nor anyone else ever sent me any of the money. I was induced to part with the money to accommodate the defendant as a friend. I had talked with him a good deal and would not have let him had the money if he had not drawn checks and assured me that the hand was as good as the other one. At the time the money and exchange was put up, he said the hand could not be beaten except by a flush. I expected to get the same money and exchange back. I never saw any money there to back up the checks. I don't remember any furniture in the room except table and chairs."

The grounds of appellant's bills of exception are sufficiently stated in the opinion.

*W. A. Hanger,* for appellant.

*O. S. Lattimore,* County Attorney, and *Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of theft, and given three years in the penitentiary.

Appellant made a motion to quash the second count in the indictment on the ground that the same sets up no offense against the laws of the State, and that there was a variance between the alleged false and fraudulent representations in the indictment and the traverse of said representations. Appellant has not called our attention to any variance between the allegations in said indictment, and we have found none. However, the trial court submitted only the first count to the jury, which charged theft, and this question need not be further considered.

Appellant excepted to the action of the court refusing to permit him to show by witness Smith Powell that before and at the time of defendant's arrest on this charge defendant had credit at the Waco State Bank of Waco, Texas, and that checks drawn by defendant would have been paid by said bank. This testimony was offered after the State had proven by prosecutor that to the best of his recollection defendant represented and stated to him that he had money and credit at the First National Bank of Waco, Texas, although he might have said the State National Bank of Waco, Texas. It is also shown in this connection

that the charge of swindling was then pending against appellant, as well as the charge of theft. It occurs to us that, under the facts of this case, the testimony was material and relevant under either count in the indictment. It was admissible, in connection with the checks drawn by appellant and set out in the indictment, to show that the same were drawn in good faith, and evidenced a loan and transfer of the money and property of prosecutor to appellant, which would answer the first count in the indictment, as tending to prove that the prosecutor parted with his property, and not the mere possession thereof; and it would also tend to show that appellant was not guilty of a fraud or pretense in the transaction, and so be an answer to either count. We do not think the fact that the bank at Waco was the Waco State Bank, and that there was no such bank as the State National Bank of Waco, Texas, would render this testimony inadmissible. At least, this was a matter subject to explanation.

We further believe that the court should have given the special requested instruction asked by appellant; that is, if the jury believed from the evidence that defendant acted in good faith in borrowing the money described in the indictment, to acquit him. The State itself introduced John L. Barlow, who testified that appellant started or was getting ready to go with him to Waco to get the money to repay him when he was arrested. Of course the testimony setting up this defense, as it appears in the record, may be weak; but that is not a criterion for the court to refuse to instruct the jury on that phase of the defense. In this connection we would remark that, if appellant had been permitted to prove he had money subject to his order at Waco, this defense would have been much stronger, and, if that evidence had been admitted, we apprehend the court would not have refused to have affirmatively instructed upon that issue of the case.

We would further observe that, if appellant was guilty of any offense, it was not of theft, inasmuch as, to our minds, the facts show that prosecutor agreed to part with his property in the money as well as in the New York exchange. True, the witness Barlow says he expected to get the identical money and draft back, but this appears to have been because appellant represented to him that his hand at cards was the best, and would win the stakes. Evidently, if it was not the best, he could not hope to get the identical money and exchange back from defendant. Indeed, the physical facts show that he secured himself before he parted with his property. He took the precaution to assure himself that appellant had money at Waco. He examined his bank book, and then took checks of appellant for the money which he advanced to him. It does not matter that these checks were subsequently secured by appellant, and destroyed or mutilated. In his testimony he says distinctly that he was induced to part with the money to accommodate defendant as a friend, and that he would not have let him have the money if he had not drawn checks, and assured him that the hand was as good as the other one. We think the facts show that prose-

cutor parted with his property in the money and the exchange, and in such case it would not be theft. Cline v. State, 43 Texas, 494; Pitts v. State, 5 Texas Crim. App., 122; Curtis v. State, 31 Texas Crim. Rep., 39.

It is not necessary to discuss other matters, but, for the errors pointed out, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

HENDERSON, JUDGE.—The judgment was reversed at a former day of this term, and now comes before us on motion for rehearing. The State, represented by the county attorney of Tarrant County, strenuously insists that a rehearing should be granted, and the judgment of the lower court affirmed; but we can see no reason to change the views heretofore expressed in the original opinion, except that we may have used stronger language with reference to our opinion as to the offense being swindling, and not theft, than is borne out by the record. A re-examination of the record suggests that the conviction may be sustained, for either theft or swindling; that is, we mean to say that appellant should be prosecuted under an indictment containing both counts, one for theft and one for swindling, and the issues properly submitted to the jury.

The motion for rehearing is overruled.

*Motion overruled.*

December 17, 1902.