## Jack Bink v. The State.

### No. 3611. Decided November 28, 1906.

**1.—Theft of Money—Extra-Territorial Offense—Swindling.**

Where upon trial for theft committed in the Indian Territory and asportation of the stolen property into this State, the evidence showed that the offense if any was swindling and not theft, the defendant could not be convicted of any offense, as swindling under articles 951 and 952, Penal Code, is not included in the inhibitions. Neither could he be convicted under the indictment charging him with theft under the evidence.

**2.—Same—Distinction Between Theft and Swindling.**

The true distinction between theft and swindling, where the property is acquired by means of false pretenses, is this: if the owner was induced to part with his property finally by means of false pretenses the offense is swindling; but where the possession delivered by the owner was obtained in a manner not sufficient to pass title to the property, the owner only intending to part with the possession and custody and not the title to his property, and the parties so acquired possession then and there entertaining the fraudulent intent to appropriate it and did appropriate it, the offense is theft.

Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of theft of money; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.— On question of theft: Davenport v. State, 89 S. W. Rep., 1077; Lewis v. State, 87 S. W. Rep., 831.

DAVIDSON, PRESIDING JUDGE.—The indictment charges appellant with having stolen seven $20 bills, and four $5 bills, all alleged to be current money of the United States of America, from Chapman, in the Indian Territory, which is alleged to be in violation of the law of the Indian Territory then in force, and known as the offense of theft, and which, if committed in this State, would have been theft, and thereafter bringing said property into the County of Lamar and State of Texas.

The evidence shows that appellant and Chapman were on the train near Hugo, I. T., and engaged in conversation. Appellant stated to Chapman that he had quite a disagreeable trip during the cold weather; that he had been over to Paris, taken up the body of his grandfather, and was moving it to the old family burying ground, near Sawyer. This part of the conversation passed, and they talked of other things. The east bound train was waiting for the southbound, which was late. The east bound train "pulled down east of the water tank," waiting the arrival of the south bound. At this juncture there came a man in, shown to be Dampers, who walked up to Bink and said, "Well, everything is loaded on nicely, and we hope you will not have any trouble from here down." He further said, "You understand the charges are to be paid at this exchange." Bink said, "Well, I have deposited all the money I had; in fact I thought I was to pay the whole charges at Sawyer." And further said, "I do not believe I have money enough to pay you. In fact, I know I have not." "He then asked me (Chapman) if he could borrow a few dollars from me until he reached Sawyer, and I told him I guessed he could. Appellant asked Dampers then what the charges would be. He told him $170, and I asked him how much money he wanted. He said, 'Give me $160, if you have got it.' He said he had $10 or $12 in his pocket. Q. Before that, had he or not offered any check to Dampers? A. Yes, sir, he did that when he told Dampers that he did not have the money. He says, 'I have not got the money unless you can cash a draft.' He handed Dampers the draft and he looked at it. He said, 'It is as good as gold,' but he says, 'I could not possibly make the change here.' He then asked me if he could get a few dollars from me, and I told him yes. He asked Dampers then what the whole charges would be, and he told him $170. I asked him, 'How much he wanted then?' and he said, 'Give me $160, if you have got it.' He says, 'I have got $10 or $12 here in my pocket, and he pulled out what money he had, and I counted him out $160. Q. What, if anything, did he say as to when he would pay it back? A. He says, 'I will hand you the money back when you get to Sawyer.' And he got up from the seat. He says, we will step in here

and sign up these papers. He says, we will have ten or fifteen minutes before the train leaves. And he stepped off two or three- steps, turned back, handed me the draft, and says, 'Here, Chapman, you hold the draft until you get down to Sawyer, and I will hand you your money back.' I stood there until they almost reached the front of the car, or had reached it. I saw they were not going in the baggage car or express car, and I thought I would follow them and when I got to the front of the car, Bink and Dampers were out on the ground and going right up by the side of the car, and there was another man coming from the other end of the car, and stopped me. Q.. If you didn't follow them, why didn't you follow them? What did you do? A. I stopped there a few minutes at the car. Q. Were you detained there a few minutes? A. Yes, sir; I was detained there a few minutes until they had gotten out of sight. I don't know where they went, and the south bound train pulled in by that time, and I went back through my car, and went into the head end of the south car, came back through looking for these fellows."

It was shown that this train came south over the Frisco road, to Paris. This witness identified Bink (appellant) as the man who got his money. Bink and Dampers were arrested subsequently in Paris and charged as set out in the indictment.

This is the second appeal. This question was raised before, as to the introduction of extraneous crimes, and error pointed out, which was sustained and the judgment reversed. This case will be found reported in 14 Texas Ct. Rep., 1011.

Several questions are suggested for reversal: only one of which we deem really necessary to be discussed, to wit: the insufficiency of the evidence to support the conviction. We believe that this contention is correct. There is and has been in England and America, and it is true in Texas, a marked distinction between theft and swindling. Article 861, Penal Code, provides, in substance, that if the possession of the property is wrongfully obtained, it is theft if the purpose at the time of obtaining the property was to appropriate it, or it was obtained by false pretenses for the purpose of appropriating it. Article 877 provides that, wherever property is obtained by contract of borrowing or other bailment, and the property is subsequently appropriated, it constitutes theft. But under these statutes and all of the law of theft, the distinction between that crime and swindling is found in this, that in theft, the title to the property is not an issue. In swindling the passing of the title is necessary. The rule may be stated in this way: The true distinction between theft and swindling, where the property is acquired by means of false pretenses, is this: if the owner was induced to part with his property finally by means of the false pretenses, the offense is swindling. But where the possession delivered by the owner was obtained in a manner not sufficient to pass title to the property, the owner only intending to part with the possession and custody and not the title to his prop-

erty, and the party so acquired possession then and there entertaining the fraudulent intent to appropriate it and did appropriate it, the offense is theft. In this State, this is the distinction made by the statutes in regard to swindling and theft, and has been recognized by all the decisions in an unbroken line, commencing with White v. State, 11 Texas, 769; see also State v. Vickery, 19 Texas, 326; Cline v. State, 43 Texas, 494; Pitts v. State, 5 Texas Crim. App., 122; Hudson v. State, 10 Texas Crim. App., 215; Frank v. State, 30 Texas Crim. App., 381; Curtis v. State, 31 Texas Crim. Rep., 39; Taylor v. State, 32 Texas Crim. Rep., 110. These are perhaps enough authorities to cite in support of this proposition. In some of the cases cited, the proposition has been elaborated, and many authorities cited.

Applying this rule to the facts of the case made by the State, we find that Chapman parted with his property and the title to it, intending to receive pay later on at a different station. In other words, if it had been a legal transaction, it would have been a loan, to be paid back upon reaching a certain point, and therefore was a parting on his part with the title to the money loaned appellant. It was not a transfer simply of the possession of the property to be returned by Bink to him. See authorities above cited. Under our law, this would have been swindling. If Bink brought the money into Texas, after receiving it, then it could not be a violation of our statute for bringing such property here, unless interdicted by the statute. Article 951, Penal Code, reads, "If any person having committed an offense in any foreign country, state or territory, which if committed in this State, would have been robbery, theft, embezzlement, or receiving stolen goods or property, knowing the same to have been stolen, or fraudulently receiving or concealing property acquired by another by embezzlement, knowing the same to have been so acquired, shall bring into this State, any property so acquired or received, he shall be deemed guilty of robbery, theft, embezzlement or receiving of goods or property stolen or embezzled, as the case may be, knowing the same to have been stolen or embezzled, and shall be punished as if the offense had been committed in this State" Article 952, "To render a person guilty under the preceding article, it must appear that by the law of the foreign country, state or territory, from which the property was taken and brought to this State, the act committed would also have been robbery, embezzlement, theft or receiving stolen goods or property, or concealing the goods or property embezzled." It is axiomatic in this State, that no act can be punished, unless the Legislature has made it an offense. An inspection of the statute cited, reveals the fact that swindling is not included in the inhibitions. The constituent elements of the offense charged in the indictment, that is, bringing stolen property into this State, are (1) the acts and intents of the parties must constitute theft, or one of the offenses mentioned in the statute, by the law of the country in which the property was taken. (2). Such acts and intents must constitute

theft or one of the offenses under the law of this State. (3) The thief or the offender must bring the property into this state." Morales v. State, 21 Texas, 298; Carmisales v. State, 11 Texas Crim. App., 474; Cummins v. State, 12 Texas Crim. App., 121; Fernandez v. State, 25 Texas Crim. App., 538; Edwards et al. v. State, 29 Texas Crim. App., 452; McKenzie v. State, 32 Texas Crim. Rep., 568. If the offense had been one of those enumerated in articles 951–2, it could be punished in this State; but swindling is not so enumerated. Therefore, it is not an offense to bring property acquired in another State or jurisdiction into this State, when it has been acquired by means of swindling.

There is another rather serious question in the case, which under the view we have taken is not discussed; that is, the motion to change the venue.

For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*