## J. VANCE LEWIS v. THE STATE.

No. 3275. Decided November 11, 1914.

Rehearing denied December 9, 1914.

**1.—Theft—Swindling—Statutes Construed.**

Where defendant was prosecuted for theft under article 1332, Penal Code, and contended that if he was guilty of any offense, it would be swindling under article 1421, Penal Code, and the evidence showed that the mere possession of the property alleged was obtained by the fraud practiced, and the title to

the property did not pass to the defendant, the same was theft, and not swindling.

### 2.—Same—Rule Stated—Distinction Between Theft and Swindling.

The true distinction between theft and swindling, where the property is acquired by means of false pretenses is this: if the owner was induced to part with his property finally by means of false pretenses the offense is swindling; but where the possession delivered by the owner was obtained in a manner not sufficient to pass title to the property, the owner only intending to part with the possession and custody, and not the title to his property, and the accused so acquired possession then and there entertaining the fraudulent intent to appropriate, and did so appropriate, the offense is theft. Following White v. State, 11 Texas, 769, and other cases.

### 3.—Same—Case Stated—Theft.

Where, upon trial of theft, the evidence showed that defendant obtained the alleged money from the prosecuting witness by the false representation that prosecutrix gave the money to be deposited in lieu of a bond for defendant's client to be returned to her in sixty days, and the defendant fraudulently appropriated the same, and the court submitting defendant's theory of defense that he received the money as a fee, a conviction for theft is sustained.

### 4.—Same—Continuance—Want of Diligence.

Where the application failed to show that process of any character had been issued to secure the attendance of the absent witnesses, there was no error in overruling a motion for continuance.

### 5.—Same—Charge of Court—Practice on Appeal.

Where the record failed to show that any objections were made to the charge of the court at the proper time, and the requested charges were fully covered by the court's main charge, there was no reversible error.

### 6.—Same—Loan—Theft—Sufficiency of the Evidence.

Where, upon trial of theft, appellant contended that the money he fraudulently appropriated was obtained as a loan by fraudulent pretenses and the case would therefore be swindling, but the testimony did not tend to raise this issue, but made a case of theft under the statute, there was no reversible error.

### 7.—Same—Objections to Charge of Court.

Where the objections raised to the charge of the court were not made when the charge was presented to defendant's counsel before submitting same to the jury, they could not be raised after verdict.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of theft; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Gibson & Wander* and *Norman G. Kittrell, Sr.*, for appellant.—On question of insufficiency of proof of theft: Underwood v. State, 49 Texas Crim. Rep., 285; Bink v. State, 50 id., 450; Taylor v. State, 32 id., 110; Williams v. State, 34 Texas, 559; Powell v. State, 44 Texas Crim. Rep., 273, and cases cited in opinion; Bullard v. Stewart, 102 S. W. Rep., 174.

*C. E. Lane*, Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of theft, and his punishment assessed at three years confinement in the State penitentiary. The evidence in this case would show that Ida Childress was arrested in Harris County, charged with a misdemeanor alleged to have been committed in Nacogdoches, Texas. When she was so arrested she was in Harris County. As to who employed J. Vance Lewis to represent her is a disputed question. The State's evidence is, that he was employed by a sister of Ida Childress, Annie Baxter, who says that he charged her a fee of ten dollars and she paid it to him.

Appellant's contention is, that he was not employed by Annie Baxter to represent Ida Childress, but he was employed by Hattie Bullock, and that his fee was $125, and all the money he received from Hattie Bullock was in payment of that fee. Hattie Bullock and Annie Baxter deny this and say that Annie Baxter employed appellant and paid him, and all the money received by appellant from Hattie Bullock was money to be used as bond for Ida Childress. Anyway, it appears conclusively from this record that appellant was employed to represent Ida Childress; that he sued out a writ of habeas corpus before Judge Robinson, and no bond of any character was required on the hearing. Now, the State's testimony is that when the hearing was had appellant went to Hattie Bullock, a cousin of Ida Childress, and represented to her that the bond of Ida Childress was fixed at $100, and he wanted her to assist in making the bond. She said she did not have that much money, but had $50 which she would put up and did put up on the bond for Ida Childress. Appellant said this was all right, he would put up the remainder. Ida Childress was discharged by Judge Robinson. Several days thereafter appellant approached Hattie Bullock and told her that the bond of Ida Childress had been increased and he needed $75 additional to put up as bond for Ida Childress, which would be returned to her in sixty days. Hattie Bullock gave appellant this $75, and on this transaction this prosecution is based.

The State's contention is that under article 1332 of the Penal Code this constituted theft—that article providing that if the money was obtained by any false pretext, with the intent to deprive the owner of the value thereof, and with the intent to appropriate the money to the use and benefit of the person taking it, it would constitute theft.

Appellant's contention is, that even though the money was obtained under the circumstances detailed by the State's witnesses, the crime proven would be swindling under article 1421 of the Penal Code, and appellant could not be convicted under an indictment charging him with theft. Article 1421 provides that the "acquisition of any money by means of any false or deceitful pretense or device, or fraudulent representation, with the intent to appropriate it to the use of the person so acquiring," is swindling.

These two articles of the Code, which, to a casual reader, would indicate that the Legislature had defined the same state of facts to constitute two separate and distinct offenses—theft by fraudulent pretext, and swindling—have often been before this court, and a line of demar-

cation has been clearly and distinctly marked out—as to what will constitute theft under article 1332, and what acts will constitute swindling under article 1421. In Underwood v. State, 49 Texas Crim. Rep., 285, this court, speaking through Judge Brooks, said: "The unbroken line of authorities in this court lay down the proposition that where the money is obtained by false pretenses, and the party intended at the time the same was obtained, to part with both the title and possession of the money, these facts make out a case of swindling and not theft. The facts before us, as stated above, show that prosecutor intended to part both with the title and possession of the money; and hence this prosecution should have been brought for swindling and not theft. Taylor v. State, 32 Texas Crim. Rep., 110; Frank v. State, 30 Texas Crim. App., 381; Pitts v. State, 5 Texas Crim. App., 122; Williams v. State, 34 Texas, 558; Powell v. State, 44 Texas Crim. Rep., 273; Price v. State, decided at Tyler term, 1905."

In the case of Bink v. State, 50 Texas Crim. Rep., 450, this court, speaking through Judge Henderson, said: "The material question is whether this conviction can be sustained for theft. Appellant contends that it can not; that if he is guilty of any offense it is swindling and not theft, inasmuch as the evidence without controversy shows that the fee in the property was acquired by him by means of a false pretext, and not the mere possession of the property. We understand our decisions on this point to hold, that the acquisition of the title to the property, that is, the fee in the property, if it is acquired by means of the false pretext, it is swindling; whereas, if the mere possession of the property is parted with, by means of the false pretext, it is theft. Articles 861, 674, Penal Code; State v. Vickery, 19 Texas, 326; May v. State, 15 Texas Crim. App., 430; Sims v. State, 28 Texas Crim. App., 447; Price v. State, 14 Texas Ct. Rep., 876; Curtis v. State, 31 Texas Crim. Rep., 39; Johnson v. State, 46 Texas Crim. Rep., 415."

And in the case of Bink v. State, 50 Texas Crim. Rep., 450, this court, speaking through Judge Davidson, said: "There is and has been in England and America, and it is true in Texas, a marked distinction between theft and swindling. Article 861, Penal Code, provides, in substance, that if the possession of the property is wrongfully obtained, it is theft if the purpose at the time of obtaining the property was to appropriate it, or it was obtained by false pretenses for the purpose of appropriating it. Article 877 provides, wherever property is obtained by contract of borrowing or other bailment, and the property is subsequently appropriated, it constitutes theft. But under these statutes and all of the law of theft, the distinction between that crime and swindling is found in this, that in theft the title to the property is not an issue. In swindling the passing of the title is necessary. The rule may be stated in this way: The true distinction between theft and swindling, where the property is acquired by means of false pretenses, is this: if the owner was induced to part with his property finally by means of the false pretenses, the offense is swindling. But where the possession delivered by the owner was obtained in a manner not sufficient to pass title

to the property, the owner only intending to part with the possession and custody and not the title to his property, and the party so acquired possession then and there entertaining the fraudulent intent to appropriate it and did appropriate it, the offense is theft. In this State this is the distinction made by the statutes in regard to swindling and theft, and has been recognized by all the decisions in an unbroken line, commencing with White v. State, 11 Texas, 769; see also State v. Vicker, 19 Texas, 326; Cline v. State, 43 Texas, 494; Pitts v. State, 5 Texas Crim. App., 122; Hudson v. State, 10 Texas Crim. App., 215; Frank v. State, 30 Texas Crim. App., 381; Curtis v. State, 31 Texas Crim. Rep., 39; Taylor v. State, 32 Texas Crim. Rep., 110."

It is thus made plainly manifest that if by the fraud practiced the *title* to the property passed to the person obtaining it, the offense is swindling and not theft; on the other hand, if the *mere possession* of the property was obtained by the fraud practiced, and the *title* to the property did not pass to the person obtaining it, such acts constituted theft under the provisions of the Code hereinbefore cited. So the question in this case is, does the evidence offered in behalf of the State show that the mere possession of the property passed to appellant, or does it show that the title to the property passed to appellant? If the title passed, the conviction can not be sustained; if the mere possession of the money passed and not the title to it, the acts constituted theft and not swindling. The law is thus made plain, and it only remains to be determined what the facts would show. Hattie Bullock testifies that the $75 was obtained from her by appellant by the representation that the bond of Ida Childress had been increased, and that she gave him the money to be deposited in lieu of a bond, to be returned to her in sixty days. Annie Baxter also so testifies. Under this testimony the title to the money did not pass to appellant—merely the possession of it, to be deposited in lieu of a bond, and the prosecution, if maintained at all, was necessarily brought under the article of the Penal Code charging appellant with theft of the money by fraudulent pretext, for the identical money was to be returned in sixty days. The evidence does not raise the question of a loan to appellant. He says this $75 was paid to him as a fee in the Ida Childress case, and at the request of appellant the court instructed the jury that if the money was paid to appellant as a fee they would acquit him. This was a submission of the defensive theory of the case, and the jury found adversely to him.

The contention that the court erred in overruling the application for a continuance can not be sustained. The application shows the materiality of the testimony of the absent witnesses beyond question, but it fails to show that process of any character had been issued to secure their attendance. (Art. 608, Code of Criminal Procedure.) The indictment in this case was returned March 26, 1914, and the trial was not had until May 13, 1914. No process had been issued for the absent witnesses; no application made for process to issue for them, and no reason stated in the application for continuance why process had not

been issued, nor applied for. Under such circumstances the court did not err in overruling the application for a continuance, for the law is that the application must not only show the materiality of the testimony, but must also show the diligence used to secure the attendance of the witnesses, or state the reason why process had not been applied for. Snodgrass v. State, 36 Texas Crim. Rep., 207; Sykes v. State, 53 Texas Crim. Rep., 165, 108 S. W. Rep., 1179; Townsend v. State, 41 Texas, 134; Hill v. State, 36 Texas Crim. Rep., 438. As the application for continuance does not show that any process had ever been issued for the absent witnesses, nor any reason shown why process had not been issued, it is insufficient in law, and the court did not err in overruling it.

There is in the record no exception to the admissibility or rejection of any testimony introduced on the trial of this cause. The record does not disclose that there was any objection made to the charge of the court as given at the time it was submitted to counsel for their inspection. The special charges requested and not given were fully covered by the court in his charge to the jury, and under such circumstances we can only affirm the judgment of the trial court.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

December 9, 1914.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and on the motion for rehearing very able and interesting briefs have been filed, both by the attorneys who tried the case, and by Judge Norman G. Kittrell, who has been retained since the trial to assist in briefing the case on appeal.

In the motion for rehearing it is not contended that we did not correctly state the law as to the true distinction between the offenses of swindling and theft by fraudulent representations, but it is contended that we misconceived the testimony of Hattie Bullock, and that her testimony does not show that it was not her intention that the title to the money should not pass to appellant at the time it was delivered to him. We have again very carefully re-read the testimony, and as stated in the original opinion, the defense was that Hattie Bullock had paid appellant the money as a fee. This she denied. That issue was submitted to the jury by the court, as shown in the original opinion, and the jury found against appellant on that contention, and it is not surprising they did so, for the testimony shows that when appellant learned that Hattie Bullock had reported the matter to the district attorney and had gone before the grand jury, he called her over the telephone and asked her about it, and upon being informed that she had done so, he told her to call at his office as he had some money for her. This she declined to do at that time, but later she consulted with the district attorney's office, and was told to accept the money if appellant desired to repay her her money, and when appellant learned she would accept

the money, his wife did pay to Hattie Bullock the money. If appellant was sincere in his contention that he had received the money as a fee in the Ida Childress habeas corpus, he would hardly have repaid it to Hattie Bullock as soon as he learned that she had reported the transaction to the district attorney, and had gone before the grand jury. If he had come by the money honestly, and relied on that defense, he would not so hastily have refunded the money, upon learning of her appearance before the grand jury, and the fact that he did refund it when he learned she had been before the grand jury, would not relieve the transaction of its criminality, as the offense was committed, if any, at the time he obtained possession of the money by fraudulent representations with the intention to appropriate it to his own use, and which he did for some six months appropriate it to his own use, only refunding it after he was notified that steps had been taken to institute a criminal prosecution.

But appellant's able counsel contend, even if that be true, that the testimony would show a loan to appellant of the money. If that be true, we concede that if the loan was obtained by fraudulent representations, it would be a swindling, as we endeavored to make plain in the original opinion, but evidently did not do so or counsel have not carefully considered the opinion. What we meant to say was, that the testimony did not tend to raise the issue that the money was loaned to him by Hattie Bullock or that the possession of it was delivered to him to be used as he saw proper as his property. The testimony of appellant's witnesses did not tend to raise that issue, but was wholly on the issue that it had been paid to him as a fee. Neither does the State's testimony tend to raise such an issue, in our opinion. Appellant in his cross-examination of Hattie Bullock asked her if the money was not loaned to appellant, and her answer was: "He has not borrowed any money from me—never borrowed any money from me. I have never loaned him any money." As appellant's witnesses do not contend that it was a loan, the authorities where a *loan* was obtained by fraudulent representations have no application to this case. The testimony of the State's witnesses show that when Judge Robinson had agreed to discharge Ida Childress, appellant did not so tell the negro women, but told Hattie Bullock that Ida's bond had been fixed at $100, and at that time obtained from her $50; that a few days later he went to Hattie Bullock's home and told her that Ida's bond had been increased, and he would have to have $75 more on the bond—that this money would be returned to Hattie Bullock in sixty days. Hattie Bullock gave him a check for the $75, but he did not cash the check, returning it to her, saying the bank would not pay it. Hattie Bullock then went to the bank and got the money and delivered the $75 to appellant to be used as a bond, to be returned by appellant in sixty days. Under this state of case we can not conceive how it can be contended that the money ever became appellant's money, or gave him the right to dispose of it for his own use and benefit. To constitute swindling, the title to the money must have passed to appellant—become his property to be used and dis-

posed of as he saw proper. This testimony does not raise that issue, but shows, if true, that the mere possession of the money was obtained by appellant by the fraudulent representation that it was needed to be used to secure bond for Ida Childress, and that the money was only needed temporarily, and would be returned in sixty days. The money would have had to become the property of appellant before the offense of swindling could have been committed, and in this case, in no event was the money to become the property of appellant.

We are criticised mildly for not passing on some of the grounds presented in the original brief of one of counsel for appellant. These grounds criticised the charge of the court. As no objections were made to the charge when presented to counsel for their inspection, such grounds could not be raised after verdict. The old rule, that errors in the charge, if errors there be, can be presented for the first time in the motion for new trial, is no longer the law in this State, but that rule was changed by chapter 138 of the Acts of the Thirty-third Legislature. That chapter provided, "before the charge is read to the jury the defendant or his counsel shall have a reasonable time to examine the same, and he shall present his objections thereto in writing, *distinctly specifying each ground of objection.*" And then provided, that if such objections are not filed at that time, we shall not reverse the case because of any errors in the charge, unless it appears from the record as a whole that the defendant has not had a fair and impartial trial. The issues raised by the record in this case were presented in the charge given to the jury; no exceptions were reserved to any evidence introduced or excluded, if any. Under such circumstances we can not consider the complaints of the charge made after verdict is rendered, and we thought counsel would so understand without us reiterating this rule of law— it having been expressly stated in many opinions heretofore rendered.

We have carefully considered every ground assigned in the case and are still of the opinion that there is no reversible error presented, and the motion for rehearing is overruled.

*Overruled.*