WILLIE GIBSON v. THE STATE.

No. 5416.   Decided June 18, 1919.

**1.—Theft—False Pretext—Sufficiency of the Evidence—Case Stated.**

Where. upon trial of theft of property of the value of more than fifty dollars, it was shown by the evidence that in dealing with defendant and others in a scheme to divide certain money which they pretended to have found and did not have the change to make the division, and thereby obtained the money of the prosecuting witness telling him that he would get his money back when they made the change, and that the prosecuting witness expected to get his money back, plus one third of the money so found, etc., the question as to whether the pretenses used by the defendant were false was a question of fact for the jury, and the conviction is sustained. Overruling Lovell v. State, 48 Texas Crim. Rep., 85, and other cases.

**2.—Same—Case Stated—False Pretext—Consent—Theft.**

Where the prosecuting witness was sixty-one years of age, and an ignorant white man and was induced to turn over his money to the defendant and his confederates, in order that the money in the supposed found pocket book could be made divisible among them, and that at the end of this division he would get his money back and one-third that was in the pocket-book the transaction comes within Article 1332, P. C., which provides though the taking be with the owner's consent yet if done under false pretext the same is theft.

**3.—Same—Distinction—Swindling—Theft—False Pretext.**

The distinction between the offense of swindling and theft by false pretext depends upon whether the injured party was induced to part or intended to part with both title and possession of his property, in which event the case is swindling; or whether he intended to part only with possession, in which event it will be theft by false pretext.

Appeal from the District Court of Kaufmann.   Tried below before the Hon. Joel R. Bond.

Appeal from a conviction of theft by false pretext; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. A. Berry,* Assistant Attorney General for the State.—Cited: Glasgow v. State, 50 Texas Crim. Rep., 635.

LATTIMORE, JUDGE.—Appellant was convicted of theft of property of the value of more than fifty dollars, in the District Court of Kaufmann County and his punishment fixed at ten years in the penitentiary.

No brief is on file in behalf of the appellant and the record is bare of exceptions either to the charge of the court or the introduction of any testimony. The motion for new trial raises but one question in such manner as to call for our consideration, namely; that under the evidence, no case is made of a violation of any law of this State.

The indictment against appellant is in the ordinary form for felony theft of personal property and charges the taking of two hundred dollars in money, etc.

In order to constitute theft under our general statute, the taking of the property must be wrongful and without the owner's consent, but in article 1332, Penal Code, our Legislature specifically provides that though the taking be with the owner's consent, yet if such consent be obtained by any false pretext, or if the taking be obtained with any intent to deprive the owner of the value thereof and to appropriate the same to the use and benefit of the taker, and the property is so appropriated, then the offense of theft is complete.

In the early case of Hornbeck v. State, 10 Texas Crim. App., 408, Judge Winkler, in discussing a conviction under this article of our statutes, says: "To constitute the offense as defined in this article, the taking being originally lawful, possession must be obtained either by the employment of some false pretext, or it must be obtained with an intent existing in the mind of the taker, at the time the possession was obtained, to deprive the owner of its value and to appropriate the property to the use and benefit of the taker, and, besides these requisites, such a taking would not be complete so as to constitute the crime of theft, until the taker has so appropriated the property to his own use and benefit."

This statement of the law is correct and in any case of theft wherein there is proof of appropriation, and that the possession of the alleged stolen property was obtained with the owner's consent, if it appear that such possession was obtained by either a false pretext or that when the property was obtained by the taker there existed a present intent to appropriate, in either case this will be sufficient. Many cases have been before this court on widely different facts showing many varieties of false pretext in order to obtain possession of property. The rule in swindling cases, that the false representations must be as to something present or past, is held to have no application in a case where the charge is

theft by false pretext.  Anderson v. State, 77 Texas Crim. Rep., 31, 177 S. W. Rep., 85; Porter v. State, 23 Texas Crim. App., 295; Bink v. State, 50 Texas Crim. Rep., 452; Lewis v. State, 75 Texas Crim. Rep., 509, 171 S. W. Rep., 217. This court has affirmed cases where the false pretext was some form of borrowing. Porter v. State, *supra;* or some form of sale where the purchaser acquired the property by what the jury found to be a false promise to pay. Anderson v. State, *supra.*

The distinction between the offense of swindling and theft by false pretext, as deduced from the opinions of this court, seems to depend upon whether the injured party was induced to part or intended to part with both title and possession of his property, in which event the case is swindling; or whether he intended to part only with possession, in which event it will be theft by false pretext.

In the instant case the prosecuting witness was an aged and ignorant white man who was induced to believe, and evidently did believe, according to the opinion of the jury, that two negroes, one of whom was appellant, had found a pocketbook containing, among other things, a one hundred dollar bill and a five hundred dollar bill, the contents of which said pocketbook said negroes proposed to divide equally among themselves and the prosecuting witness if they could only make change in such form as that the money could be divided. One of the negroes at one stage of the proceedings left and pretended to go to see his employer to get him to change the money, but coming back, said: "The boss man didn't have the change to change up the money in the purse and that we would have to get the change to change it up." In discussing how the money could be changed, appellant claimed to have only one hundred dollars and the prosecuting witness had but eight dollars, but said witness told the two negroes that he had some money in the bank that he had borrowed to live on, and at their insistence he went to the bank and drew out two hundred dollars. Appellant went with him to the bank, saw him draw out the money and they returned together to where the other waiting negro was. When they got back appellant took out some paper wrapped up tight and handed it to the other negro, saying there was one hundred dollars. The other negro asked if there was really that amount of money in the paper and appellant stated there was, and the other said to appellant, "Ain't you got no more change," and appellant produced and handed over another dollar. The prosecuting witness delivered his two hundred dollars to the other negro who thereupon said: "Ain't you got no change?" and prosecuting witness said he only had eight dollars more, which he needed; but the negro said: "The boss man wants it so he can get change out of it, and, of course, you will get your money back." Thereupon the prosecuting witness handed over his other eight

dollars. Thereupon the other negro left appellant and the prosecuting witness, but presently came back and said the boss man could not make change before night and when informed that the prosecuting witness could not meet them that night, said negro promised to be at the postoffice the next day at ten o'clock with the prosecuting witness' money in an envelope. They parted under this agreement. Later, and after conferring with friends about the matter and when the prosecuting witness told his story, the two negroes were arrested and $110 was found on one and $105 on the other.

Regarding his money and the way he looked at the transaction, the prosecuting witness said: "I let them have my money because they were going to use it to change up this money; yes, I thought they had a five hundred dollar bill and that was the reason I let them have my money. Yes, they were going to give me my money back and two hundred dollars besides." On cross-examination he said: "I wasn't going in with them—he was just going to give me a third of what the pocketbook contained." He also said: "Yes, I was going to take a third of what the purse contained—if there wasn't but fifteen cents, I was to have a nickle of it."

We think the trial court and jury were justified in concluding that the prosecuting witness expected to get his money back and that he thought its only purpose in the scheme was to enable change to be made. This was the purpose for which he was told the boss man wanted it and he swore in that connection that appellant's confederate told him, "Of course, you will get your money back," and that he did expect to get it back plus one-third of the contents of the purse, whatever it might be.

Our attention is called to the Lovell case, 48 Texas Crim. Rep., 85 and the Williams case, decided at this term. The latter was a swindling case and was reversed on the facts, this court holding that the representations to the injured party amounted only to false promises as to future performances and that same could not support a swindling conviction. We further intimated in said case that one who parted with his property in actual exchange for property known by him to be stolen would not thereby be parting with said property under such circumstances as to amount to swindling. We think this is correct but that case is not in point. Nor do we agree with the Lovell case *supra* which holds that the false pretext, which if true would make the person induced to part with his property by his reliance thereon, guilty of a crime, would not support a conviction of theft by false pretext.

The Lovell case cites as its principal authority Bishop's New Crim. Law, section 468, an inspection of which shows that Mr. Bishop quotes, as an exception to the general rule a New York case, to-wit: McCord v. People, 46 N. Y., 470, which in turn is based on a Wis-

—85 T. C. R.

consin case. The next section of Mr. Bishop's work, section 469, immediately following that quoted in the Lovell case, cites and discusses the Massachusetts doctrine which is the opposite of the New York position used in the opinion in the Lovell case. Mr. Bishop says concerning the Massachusetts doctrine: "This view accords with the general spirit of the criminal law, wherein the fault of one man is not received in excuse for that of another; while the New York doctrine would introduce a well-known principle of civil jurisprudence into a system of laws to which it is alien." In the Lovell case the injured party was unquestionably induced to surrender to the accused $85, in money upon what was admitted to be a false pretext, to-wit, that for $85 the appellant therein would secure the dismissal of a prosecution which was in the formative stage against the injured party, eighty dollars of said money to go to the count attorney and five dollars to the appellant. In fact no such prosecution was in any stage of development and the accused so admitted on the trial. Upon conviction of theft by false pretext, the same was reversed by this court upon the ground that the false pretext, if true, would have made the owner of the money guilty of conspiracy to bribe an officer. As stated by Mr. Bishop, to so hold is for this court to engraft upon our system of penal laws, as written by the Legislature, an exception that the lawmaking body did not see fit to place there, and is to hold that the Legislature intended to say in article 1332, that if the false and fraudulent pretext was of such nature as that acquiesence therein would or could make the injured person a party to some criminal scheme, if true, then such pretext would not suffice.

The language used in article 1332 is the very broadest possible. It says, "if any false pretext" induce the surrender of possession then the taker is guilty of theft, and this is what the lawmakers intended to say. It is well known that all men are not of equal intelligence or equally informed of the law and yet it is fundamental that all men ought to be equally protected at the law's hands. A man who cannot read—a stranger ignorant of our laws—a defective who is not the peer of the ordinary citizen—the wayfaring man, though a fool—none of these may be cheated by false pretext out of what is rightfully theirs, and have the thief go unwhipped of justice upon the specious plea that by acquiescense both are coated with the same taint. Rather than that such immunity be offered the impudent thief who skulks behind the court's protecting pronouncement and laughs to scorn the plucked dupe of his skillful pretence, let this court say that what the lawmakers have written shall be as they have written it and that henceforth it shall be left for a jury of the county to decide as a question of fact if the false pretext in truth took from the owner the possession of his property. Then the victim will not become the bearer or sharer of the guilt of the thief and the shell-game, card-sharp, confidence man will find

it less profitable to ply his trade.   The Lovell case is overruled.   In the instant case the jury believed that the prosecuting witness, who was 61 years of age and unable to read, was induced to turn his money over to the appellant and his confederate in order that by its aid and by its use the money in the supposed found pocketbook could be made divisible among the three and that at the end of the division he would get his own money back and a third of what was in the pocketbook besides.   That this scheme would not impose upon a man of intelligence, or perhaps of average intelligence, is not a question that is involved in this case, nor indeed ought it to be.   It did impose on this humble citizen and if it had that effect, it is, and ought to be, punishable and within the inhibition of the law.

Mr. Bishop says in section 436 of his admirable work on Criminal Law: "It is impossible to estimate a false pretense otherwise than by its effect.   It is not an absolute thing, to be handled and weighed as so much material substance; it is a breath issuing from the mouth of  a man, and no one can know what it will accomplish except he sees what in fact it does. Of our million of men, there is not one who would not be pronounced by the rest to hold some opinion, or to be influenced in some affair, from considerations not adapted to effect any mind of ordinary judgment and discretion.   And no man of business is so wary as not in a single instance to commit a mistake such as any jury would say on their oath could not be done by a man of ordinary judgment and discretion.   These things being so, plainly a court cannot, with due regard to the facts of human life, direct a jury to weigh a pretense, an argument, an inducement to action, in any other scale than that of its effect."

As stated, the question as to whether the pretenses used by appellant were false, was one for the jury, and as to whether the same did, in fact, induce the surrender of the possession of the alleged stolen property was also for the jury, and when the court appropriately submits both issues and the jury decided same against the appellant, we do not think he could be heard to complain that the scheme which he had inaugurated and by which he had profited, and by means of which he had obtained from another his property, was guiltness of the law because the ignorant or the foolish were his victims.

As stated above, no exceptions to anything that transpired on the trial are before us and the only contention being that the evidence is insufficient to support the verdict, which is herein disposed of. We think the judgment of the trial court should be affirmed.

*Affirmed.*