## T. C. NEWCOMB v. THE STATE.

No. 17712. Delivered February 12, 1936.
Rehearing Denied June 24, 1936.

The opinion states the case.

*E. V. Hardwick,* of Stamford, and *Stinson, Hair, Brooks & Duke,* of Abilene, for appellant.

*Otis Miller,* District Attorney, of Anson, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of theft of property over the value of $50.00; and his punishment was assessed at confinement in penitentiary for a term of two years.

On a former day the judgment of conviction was reversed and the cause remanded because we were of the opinion that the trial court erred in failing to respond to appellant's request for an affirmative instruction to the effect that in case the jury should find and believe that appellant lawfully acquired possession of the alleged stolen cotton seed and later formed a fraudulent intent to deprive the owner of the value thereof and to appropriate it to his own use, to acquit.

The State through the district attorney of the 40th Judicial District filed a motion for rehearing in which he contends that we did not get the significance of the court's charge which reads as follows: "Even though you believe from the evidence that the property named in the indictment was taken from the possession of Guy Douthit by defendant, you cannot convict the defendant unless you further believe from the evidence, beyond a reasonable doubt that the defendant at the time of taking, if any, intended to deprive the owner of the value of the property and to appropriate the same to his own use and benefit." The appellant's contention was that his requested instruction was the converse of the court's charge above quoted and that he was entitled to the same. As a rule the court should submit the defendant's defensive theory in an affirmative manner and should also submit the converse of the State's theory. But inasmuch as we fail to find any testimony which would support the theory that appellant formed the intent to appropriate the cotton seed to his own use and benefit after he took possession thereof, we do not think the requested charge was authorized and we were in error in holding in our original opinion that such a charge should have been given.

By bill of exception number one appellant complains of the testimony of Paul Smith that he issued a check payable to Guy Douthit for $78.10, being the exact amount of a check for $78.10 payable to A. L. Simpson, and shown witness Smith, while on the stand. The appellant's objection to same was that it was hearsay. If it be granted that it was hearsay, it was harmless in view of the fact that Mr. Douthit had testified without objection, "I got a check for $78.10 from the Hamlin Cotton Oil Mill," before Mr. Smith was called to testify.

By bill of exception number two appellant complains of the action of the trial court in permitting Paul Smith to testify that said check in the sum of $78.10 had been cashed. This was objected to as being hearsay. The bill is qualified by the court, and in his qualification the court states that Mr. Douthit had already testified, without objection, that he had received from the Hamlin Cotton Oil Mill the check for $78.10 and cashed it. The error, if any, was thus rendered harmless.

Bill of exception number three complaining of the action of the trial court in declining to direct a verdict of acquittal presents no error.

Bill of exception number four complaining of the action of the trial court in declining to submit to the jury appellant's

requested instruction to the effect, "that if the jury should find that appellant lawfully acquired possession of the property which he is charged with having stolen and without fraudulent intent and later formed the intent to appropriate and convert the same to his own use and benefit to acquit him." What we have said in the beginning of this opinion with reference to the court's failure to give such instruction applies here, and we do not see that it would serve any useful purpose to enter upon a further discussion thereof.

Appellant's next contention is that the testimony is not sufficient to warrant his conviction. Appellant made a written confession to the county attorney of Jones County which, omitting the formal parts, reads as follows: "And I wish to further say that on the 21st day of December, 1934, J. L. Sparks and myself had been hauling cotton seed from Lueders to Stamford for Mr. Douthit. Late in the afternoon we made a trip to Stamford with a load of seed and went out to the beer joint out north of Stamford. We drank several bottles of beer and decided to go back to Lueders and get the last of the seed, as Mr. Douthit had told us to get the last of the seed. We had decided to take this last load to Hamlin about four o'clock in the morning of the 22nd and took the seed to the Hamlin Cotton Oil Mill and sold the seed for $78.10. We never cashed the check but had it with us at the time we were arrested." It occurs to us, that although appellant was authorized to haul the seed to Stamford and not to Hamlin, yet according to his confession, he and Sparks seem to have formed the intent to appropriate the cotton seed before it was loaded and taken into possession by them under his contract of employment. Art. 1413, P. C., provides that if at the time of the taking the accused intended to fraudulently appropriate the alleged stolen property, it would constitute theft notwithstanding it came into his possession with the owner's consent, and in support thereof refer to the following cases: Riggs v. State, 70 S. W. (2d) 164; Davenport v. State, 78 S. W. (2d) 605.

We do not believe that under the facts in this case we would be justified in saying that the testimony was insufficient to warrant and sustain the judgment of conviction. Appellant had authority to take the seed from the gin and haul them where directed by Douthit. He was directed to haul the seed to Stamford and had permission to take them for a purpose of so hauling them, but he had no authority or permission to take them for the purpose of hauling them to Hamlin. It appears from appellant's confession that before he and Sparks

went after the last load of seed they had decided to take them to Hamlin and sell them there and appropriate the money. This they had no permission or authority to do, and the taking of the seed in question was without the consent of the owner and the takers had the fraudulent intent at the very time of the taking to deprive Douthit of their value and to appropriate it to their own use.

It is therefore ordered that the State's motion for rehearing be granted, that original opinion be withdrawn, and the judgment of the trial court be and the same is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We see no reason for debating the proposition as to whether Douthit, the owner of the alleged stolen property, consented to the taking of same at the time that he directed appellant to haul away the cotton seed from the gin. Under authorities too numerous to mention it is the settled law of this State and statutory, that one who takes property of another with the owner's consent, but intends at the time he takes it to appropriate it to his own use and benefit, and does so appropriate it, is guilty of theft.

This is the real point in the case before us. As said substantially in our original opinion, after appellant had hauled two loads of cotton seed from Douthit's gin, and delivered them to the parties to whom Douthit had been accustomed to sell seed, it is shown by the statement of facts in this case that appellant and the man who was operating with him, Sparks, after delivering the second load of seed "Went out to the beer joint out north of Stamford. We drank several bottles of beer and decided to go back to Lueders and get the last of the seed, as Mr. Douthit had told us to get the last of the seed. *We had decided* to take this last load to Hamlin and sell them ourselves and keep the money. We got into Hamlin about 4:00 o'clock in the morning of the 22nd, and took the seed to the Hamlin Cotton Oil Mill and sold the seed for $78.10." The above quotation is taken from appellant's confession. The ordinary grammatical construction of the English language makes plain the fact that when appellant and his companion left Stamford, after being out at the beer joint, that they "had

decided" to take the remainder of the seed to Hamlin and sell them and keep the money. Giving effect to this statement of appellant, which is borne out and corroborated by the subsequent events,—they then proceeded to Lueders, and took the remainder of the seed and carried them to Hamlin and appropriated them by selling them to the Hamlin Cotton Oil Mill.

We think the charge of the court amply protected appellant's rights in that he told the jury that even though they believed the cotton seed were taken from Douthit's possession by the defendant, they could not convict him unless they believed from the evidence beyond a reasonable doubt that at the time he took them he intended to deprive the owner of the value of same, and that he did appropriate them to his own use. We deem further discussion of the propositions involved unnecessary.

The motion for rehearing is overruled.

*Overruled.*