### A. T. Segal v. The State.

No. 7546. Delivered May 14, 1924.

Rehearing denied November 12, 1924.

Theft—Indictment—Theft—Elements of.

Appellant was convicted of theft. The facts show that he had bought a bill of goods, from a wholesale merchant with whom he had been dealing for some time. The goods were bought on credit, and were delivered, the possession and title both passing to him. Was his offense, if any, theft?

The unbroken line of authorities in this court, lay down the proposition that where the money (or goods) is obtained by false pretenses, and the party "intended at the time the same was obtained to part with both the *title*, and *possession* of the money (or goods) these facts make out a case of *swindling* and not *theft*. See opinion for an exhaustive discussion and collation of authorities.

Appeal from the Criminal District Court No. 2 of Dallas county. Tried below before the Honorable Chas. A. Pippen, Judge.

Appeal from a conviction of theft; a felony, penalty three years in the penitentiary.

*A. H. Mount* and *Robt. B. Allen* for appellant.

*Jed C. Adams, Tom Garrard,* States Attorney, and *Grover C. Morris,* Assistant States Attorney for the State.

MORROW, PRESIDING JUDGE.—The appeal is from a conviction of the offense of theft; a felony; punishment fixed at confinement in the penitentiary for a period of three years.

Appellant was a merchant doing a jobbing business, and was a customer of a wholesale establishment. He had on various occasions purchased large amounts of goods from this wholesale dealer; had been extended credit for the amount of the purchases; and so far as the record reveals, these transactions had been mutually satisfactory. He entered the store and told Boggess, the employee who had the authority to authorize sales on credit, that he desired to buy some articles, and was told by Boggess to go to Williams, the salesman, and make the selections. Appellant inspected some overalls of which there were on hand fifty-six dozen. Williams priced the entire lot. Appellant purchased one pair of overalls for a sample and later telephoned that he would take the lot at the price fixed. Williams passed the order to the billing clerk; it received the approval of Boggess, and the goods were delivered to the appellant and billed to him on the terms which were customary, viz., to be paid for within sixty days, with the option of a discount of two per cent if paid for in cash. After receiving the goods, appellant sold them to other dealers at a reduced price, and other testimony was introduced, from all of which the jury decided that at the time appellant bought the goods, he did not intend to pay for them.

On these facts the State asserts and the appellant denies that the conviction may legally stand. While the averments come within the terms of the general definition of theft embraced in Article 1329, P. C., it is claimed by the State that the proof comes within the purview of Article 1332, P. C., which reads thus:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the

subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

One who with a preconceived design to fraudulently deprive the owner of personal property, obtains possession of it and makes use of the possession to convert the property to his own use, would not be excused from a charge of theft by the fact that the owner consented to part with the possession of his property. This we understand to be a general rule often applied in our own and other jurisdictions. See Hedge v. State, 89 Texas Crim. Rep. 238, in which the owner, by mistake, overpaid a sum of money in payment of an account, and the receiver was convicted of theft. See also Campos v. State, 84 Texas Crim. Rep. 217. The principle has found expression in statutory provisions, notably in the statute denouncing theft by bailee. See Art. 1348, P. C.; Lee v. State, 81 Texas Crim. Rep. 117; also.Art. 1416, P. C., (the statute defining embezzlement); Simco v. State, 8 Texas Crim. App. 406; Zysman v. State, 42 Texas Crim. Rep. 432; Wilson v. State, 47 Texas Crim. Rep. 159. Other illustrations are to be found in Ruling Case Law, Vol. 17, pp. 13 to 19, inclusive.

When the owner of property voluntarily parts, not only with its possession but with the title to the property as well, the offense is not theft. It may, under certain circumstances, be swindling; but one having both the possession and title to property does not, by converting it, become guilty of theft, notwithstanding the acquisition with fraudulent intent. As summarized by Judge Lattimore in Gibson's case, 85 Texas Crim. Rep. 465, it is said:

"The distinction between the offense of swindling and theft by false pretext, as deduced from the opinions of this court, seems to depend upon whether the injured party was induced to part or intended to part with both title and possession of his property, in which event the case is swindling; or whether he intended to part only with possession, in which event it will be theft by false pretext."

Touching the particular statute under consideration (Art. 1332 P. C.), this court, in the case of Frank v. State, 30 Texas Crim. App. 382, had before it a transaction in which Frank purchased from Vickers five dozen eggs with a fraudulent intent. Frank was convicted of theft. The court reversed the case, saying:

"If the owner parted, or intended to part, with the title of the property, the offense could not be theft, but would be swindling."

In Bink's case, 50 Texas Crim. Rep. 452, the facts showed that while Bink and Chapman, who were strangers, were riding on a train, Bink was notified that a certain sum of money would be needed

at once to pay freight charges. Bink told Chapman that he did not have the funds; that he had not expected a demand for charges until they reached the station of Sawyer, where he had deposited all of his money. Upon this statement, which the jury found to be untrue, he borrowed from Chapman a sum of money, stating that on reaching Sawyer, the money would be refunded. His conviction for theft was reversed upon the ground that Chapman, in lending the money to Bink, *parted with both title and possession,* and that the offense was not theft.

The statute in question was construed in Price's case, 49 Texas Crim. Rep. 132, in which Price falsely represented to Stegall that he had committed an offense while intoxicated, and would be prosecuted unless he paid to Price a sum of money. Upon the acquisition of the money upon the false statements, Price was convicted of theft. The court, in reversing the case, said:

"Clearly under these allegations Stegall intended to part with the property *and the title to it,* in order to avoid the consequences of the alleged assault on the old man. Unaccompanied by threats, it would be swindling. * * * With the threat involved in the transaction and alleged, it might be robbery under article 857, Penal Code. However, we are not discussing these questions, and only allude to them in regard to the contention that this is not a case of theft by false pretext under article 861 (now Art. 1332) of the Penal Code."

In the case of Pitts v. State, 5 Texas Crim. App. 122, the facts were these: Nixon loaned Pitts a horse. Pitts traded the horse to Robinson, representing that it belonged to him. He was indicted for the theft of the horse which he got from Robinson. The court, in reversing the case, said:

"It is clear from the evidence that Robinson intended to part with his property, the bay gelding mentioned in the indictment, when he traded him to Pitts."

Illustrations of like announcements by this court upon similar facts might be extended. See Cline v. State, 43 Texas Reports, 494; Underwood v. State, 49 Texas Crim. Rep. 286; Powell v. State, 44 Texas Crim. Rep. 278. The decisions of this court from its earliest days, in construing the statute under consideration, have uniformly declared as was said in Underwood's case, supra:

"* * * the unbroken line of authorities in this court lay down the proposition that where the money is obtained by false pretenses, and the party intended at the time the same was obtained, to part with both the *title* and *possession* of the money, these facts make out a case of swindling, and not theft. The facts before us, as stated above, show that prosecutor intended to part *both* with the *title* and *possession* of the money; and hence this prosecution should have been brought for *swindling* and *not theft.*"

This uniform construction of the statute has prevailed, notwithstanding the re-enactment of the statute unchanged in the several revisions of the code, thereby giving to the statute legislative sanction of its judicial interpretation. The proposition that the acquisition of property upon a fraudulent pretext by the receiver or upon his fraudulent intent will not support a conviction for theft if it appears that the owner intended to part with both possession and title, is declared by the courts and text-writers. From the Amer. & Eng. Ency. of Law, 2nd Ed., Vol. 18, pp. 481-482, we quote:

"Thus, it is not larceny for a person with such intent to obtain goods from the owner under a pretense of purchasing, provided the seller had made a complete delivery with the intention of passing the title."

The same, in substance, is the language found in Cyc. of Law & Proc., Vol. 25, p. 33. See also Wharton's Crim. Law, Vol. 2, Secs. 1126 and 1206; Ruling Case Law, Vol. 17, p. 1415. The cases cited by the State do not conflict with this view.

The cases of Hernandez v. State, 20 Texas Crim. App. 152; Morrison v. State, 17 Texas Crim. App., 34; Hornbeck v. State, 10 Texas Crim. App. 462; Stokely v. State, 24 Texas Crim. App., 509; Rumbo v. State, 28 Texas Crim. App. 32, were reversed because the evidence was insufficient. The remarks contained in them concerning the statute in question must be interpreted in the light of the facts then before the court. In the first case mentioned, Hernandez hired a horse for the purpose of riding it to San Antonio, representing that he would return the horse the next day. He did not return the horse but sold it. The decision rendered was that the mere fact that he sold the horse was not sufficient to show an intent existent at the time that he hired the horse to convert it to his own benefit. It is clear that under the proof there was no intent on the part of the owner to part with the *title* to the horse. The owner placed the horse in the *possession* of Hernandez for temporary use with consent that Hernandez might have possession for the use mentioned, without having any *intent* to confer upon him the *title*. The same principle prevails with the same results in the other cases to which reference has just been made, in all of which the facts are similar.

At the time these cases were decided, Article 1348, defining theft by bailee, had not been enacted. The Williams case, 30 Texas Crim. Rep., 154, cited by the State, was tried after the enactment of that statute, and was similar on the facts to that of Hernandez and others. Proof of a fraudulent intent was lacking, and the suggestion was made that the prosecution should have been under the statute defining theft by bailee. The same is true of Neel's case, 33 Texas Crim. Rep., 408. Hedge v. State, 89 Texas Crim. Rep., 238; and Campos v. State, 84 Texas Crim. Rep., 216, are cases in which the property came into the possession of the accused by a mistake of the owner, who had no intent

to part the title. In each case the conviction was sustained under Art. 1332.

In Anderson's case, 77 Texas Crim. Rep., 31, hogs were sold for cash by Sims. Anderson pretended that he would pay cash on delivery. Sims parted with the possession for the purpose of transportation to Anderson's home, but there was no intent upon the part of Sims to pass the title until the cash was paid. The conviction was sustained.

In Lewis v. State, 75 Texas Crim. Rep. 509, the accused falsely represented that a bail bond was required and obtained money to deposit as security for the bail. His representations were false and he converted the money. His conviction was proper.

In Rundell's case, 235 S. W. Rep. 909, the writer of the opinion expressly adheres to the principles controlling in the decision of Gibson's case, supra. In the concurring opinion, express adherence was given to the interpretation of the statute in question, as reflected by previous decisions. The Gibson case (85 Texas Crim. Rep. 462), specially mentioned in the Rundell case supra, cited many others, including the case of Bink v. State, 50 Texas Crim. Rep. 452, from which the quotation has been taken in this case, and Porter's case, 23 Texas Crim. Rep. 295. These cases pertinently exemplify and apply the principle to which reference has been made. The facts in Porter's case, supra, are these: Porter, Redding, Bagley and Wilson formed a conspiracy to acquire Tolan's money. Porter induced Tolan to enter a room in which Redding, and Wilson were playing cards. Porter entered the game and procured from Tolan several sums of money upon the representation by Porter and his confederates that the money would be returned at the end of the game. Porter and his confederates feigned a riot, extinguished the lights, and refused to return Tolan his money. It is obvious that under these facts Tolan did not intend to part with the title to his money, but with the possession alone and that, for the temporary purpose of use in the game. Taking advantage of the possession thus acquired, Porter and his confederates, as shown by the evidence, appropriated the money to their own use. Porter's conviction of theft was affirmed.

The evidence in the instant case shows that the goods in question were sold to appellant on credit. They were delivered to him without reservation of title. The intent of the owner was manifestly to part with both the possession and title of the goods and to vest the ownership in the appellant. They became his property to do with them as he pleased. Under the precedents cited, he cannot be held guilty of theft.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

HAWKINS, Judge.—The state presents its motion for rehearing, and through Hon. Jed C. Adams, special prosecutor, a forceful oral argument, in which the proposition is urged that if the pretended purchaser has in his mind at the time of purchase the fraudulent intent never to pay for the article so obtained that it is a fraud upon the seller, and that in fact their minds never met on the contract and that no title to the property should be held to have passed. The question is not free from some difficulty; but this court in giving practical application to the statute under consideration has consistently held that where the seller parts with the possession of his property at the same time intending to part with the title thereto no offense of theft can be predicated on the transaction.

Believing our former opinion to be in harmony with this construction of the statute the state's motion for rehearing is overruled.

*Overruled.*