EUGENE J. BRADY *vs.* NORWICH UNION FIRE INSURANCE
SOCIETY, LTD.

JUNE 23, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  *Contracts.  Insurance.*

A contract of insurance made and to be performed in this State will be con-
strued in accordance with the law of this State.

(2)  *Contracts.  Insurance.  Intent.*

In a policy of insurance the intent of the parties as expressed in the language
of the entire contract is to be sought and given effect if practicable.   This
intent is to be considered in the absence of evidence to the contrary to be
in accord with the established law of the State, both statute and common
law.   Where there is any uncertainty in the meaning of the words used,
the party who selected such words properly should bear the burden of any
disadvantage caused thereby.

(3)  *Contracts.  Insurance Against Theft.*

Insurance policy insured plaintiff against "theft, robbery or pilferage".
Plaintiff was deprived of his property by false representations of such a
character that under Gen. Laws, 1923, cap. 397, sec. 15, it amounted to
larceny.

*Held,* that the loss was by "theft" within the meaning of that word as used
in the policy.

ASSUMPSIT.   Certified under Gen. Laws 1923, cap. 348,
sec. 5.

STEARNS, J.   This is an action in assumpsit brought on a
policy insuring plaintiff for one year from, among other
things, "theft, robbery or pilferage, excepting by any person
or persons in the assured's household or in the assured's
service or employment . . . "   On demurrer to the
declaration and prior to trial, the question whether plaintiff
was entitled to recover damages under the terms of the
policy has been certified to this court.   (G. L. 1923, C. 348,
s. 5).

On Saturday afternoon, August 15, 1925, a man who
falsely represented himself to be one H. L. Carpenter, a
relative of one of the justices of the Superior Court and the
proprietor of the Equitable Loan Co. of Providence, went

to an automobile salesroom in Providence where plaintiff was employed, inquired for the plaintiff and offered to buy plaintiff's automobile if plaintiff would deliver it to him at once. Plaintiff agreed to sell and required Carpenter to sign an order blank for the automobile. Carpenter signed the blank and falsely stated thereon that he resided at Laurel Park, Woonsocket. Carpenter then gave to plaintiff his check for $1,625, the agreed price, drawn by Carpenter on the Industrial Trust Co., a bank in Providence. The car was then delivered to Carpenter who at once drove it out of the State Carpenter never had any account in the bank and payment of the check was refused by the bank on the following Monday. Plaintiff employed detectives and as a result of their efforts his automobile was recovered in Maryland, September 15, 1925. Plaintiff sues to recover for necessary repairs, replacements and other damage suffered.

(1) The question is,—Was this transaction of "theft" within the meaning of that word as used in the policy of insurance? As this contract of insurance was made and was to be performed in this state it is to be construed in accordance with the law of this State.

The intent of the parties, as expressed in the language of the entire contract, is to be sought and given effect, if practicable. This intent is to be considered, in the absence of evidence to the contrary, to be in accord with the established law of the State, both statute and common law. If there is any uncertainty in the meaning of the words used in the contract, the party who selected such words properly should bear the burden of any disadvantage caused thereby. Plaintiff was deprived of his property by a crime. The

(2) giving of a false name and address, and of a worthless check after banking hours; the purchase on condition of immediate delivery and the flight from the State show that the crime was carefully planned. At common law, as plaintiff parted voluntarily with title as well as possession, the crime was not larceny, but the obtaining of goods by false pretenses. But if plaintiff had parted only with the possession, it would have

been larceny. As stated in 17 R. C. L. (p. 8): "The distinction between larceny and false pretenses is a very nice one in many instances. In some of the old English cases the difference is more artificial than real, and rests purely on technical grounds. Much of this nicety is doubtless owing to the fact that at the time many of the cases were decided larceny was a capital felony in England, and the judges naturally leaned to a merciful interpretation of the law out of a tender regard for human life."

Many of the ancient technicalities of the law of larceny have been abolished in this State by the legislature. In *O'Brien* v. *Moskol*, 45 R. I. 486, it was held that under the provisions of General Laws, 1923, C. 397, s. 13, which provides that the fraudulent receiver of stolen goods shall be deemed guilty of larceny, and C. 333, s. 16, which provides that whenever any person shall be guilty of larceny he shall be liable to the owner of the property taken for twice the value thereof, such receiver was liable for double damages as for a larceny. In General Laws, 1923, C. 397, s. 16, it is provided that embezzlement shall be deemed to be larceny; in section 15, that every person who shall obtain from another designedly by any false pretense any money or other property, with intent to cheat or defraud, shall be deemed guilty of larceny, with a penalty of imprisonment or fine or both (s. 18).

Plaintiff's loss was caused by larceny. In legal and popular language, Carpenter could properly be called a thief; he got the automobile by fraud and took it away with intent to steal it. To construe the policy so as to allow a recovery, if plaintiff parted with possession only, and to (3) deny recovery if he intended to part with both title and possession, in view of the abolition by statute of the distinction between the two crimes, we think would be a strained and unfair construction. The cases are in conflict, due largely to the differences in state laws. By continuing to use such a general term as theft in the policy, it may be that an appearance of more complete protection to the assured is

made than is really intended. But if this is the fact, the remedy is simple; it is only necessary for the insurer to add another exception to the policy, limiting exactly the class of thefts insured against.

Defendant cites the recent case of *Van Vechten* v. *Amer. E. F. Ins. Co.*, 239 N. Y. 303. In that case defendant's policy of insurance on plaintiff's automobile insured against theft, robbery or pilferage. Plaintiff left his automobile at a garage to be repaired. The proprietor of the garage took the car out for his own purposes and met with an accident which damaged the car. Plaintiff recovered the damaged car and sued on the policy for reimbursement for his loss. A section of the State penal code provided that any person who without the consent of the owner shall take, use, operate or remove an automobile from any building or place, and operate or drive the same for his own profit, use or purpose, steals the same and is guilty of larceny. It was held that there was not a theft within the meaning of the policy and defendant was not liable. In its opinion the court says that "theft" though often used as synonymous with "larceny" is nevertheless a looser term, and one more colloquial or popular; that "theft" is not to be limited to what would be larceny at common law, and that larceny by a bailee or a fiduciary would be theft within the policy, though strictly an embezzlement for the reason that there is no essential difference in the character of the acts or in their effect upon their victim. Considering the heading of the statute, "Unauthorized use of motor vehicles," it was held that it referred to an offense that is something less than theft as theft has commonly been known. The court apparently intended to distinguish between cases of larceny where there was a criminal intent to deprive one of his property, and those where there was only an unlawful use of property without the consent of the owner. If this conclusion is correct, the decision does not give much support to defendant's claim. In *Royal Ins. Co.* v. *Jack,* 148 N. E. (Ohio) 923, under a like clause in the policy, it was held by a

divided court, that when the owner of an automobile sold the same and transferred title and possession to the vendee who paid therefor with a forged check, such fraudulent transaction was not a "theft" within the terms of the policy. In the opinion the court states that under the provisions of the Ohio code the vendee was guilty of obtaining money by false pretenses but was not guilty of larceny. The reasoning of the majority opinion however supports defendant's claim, although there is a difference in the statutes of Ohio and this State. The construction of this clause of the policy in each state must be made in the light of the existing laws of the particular state. So construed, in this case we are of the opinion that the loss was by "theft" within the meaning of that word as used in the policy.

The question certified is answered in the affirmative.

The papers in the cause with the decision of this court certified thereon are sent back to the Superior Court for further proceedings.

*Comstock & Canning, Andrew P. Quinn,* for plaintiff.

*Hinckley, Allen, Tillinghast & Phillips, Clifford A. Kingsley,* for defendant.