ED ROE V. THE STATE.

No. 21104. Delivered June 5, 1940.
Rehearing Denied December 4, 1940.

The opinion states the case.

*Robert P. Brown* and *W. A. Johnson,* both of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of cattle. The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant presents two propositions upon which he seeks a reversal of this case. The first is that the evidence is insufficient to justify and sustain his conviction, and the second that the court erred in failing to instruct the jury that they could not convict the defendant unless they should find and believe from the evidence that there was some false pretext on the part of the defendant as to some past or present fact upon

which defendant ( evidently meaning owner) relied and but for which he would not have parted with his property. We will take up each of his propositions in their order and discuss them briefly.

The State's testimony shows that on Sunday, August 20, 1939, appellant came to the home of Anton Willeke to purchase some steers. They finally agreed upon the price thereof, which amounted in the aggregate to $1119.00. Appellant gave Willeke a check in said sum drawn on the First National Bank of San Angelo, Texas, which check was dated August 22, 1939, and he told Willeke that he may lack a few dollars of having enough money in the bank to take care of it; that his son had three carloads of sheep on the market and that it would be that long before the money would be in the bank. Thereupon, Willeke let him have the cattle which appellant immediately carried to the stock-yards at Fort Worth, where he sold them through the Baggett-Kenne Commission Company. Appellant did not intimate that he desired to purchase the cattle on credit, and Willeke would not have sold them to him on credit. Willeke presented the check to the bank for payment on the 22nd day of August, 1939, but the bank declined to pay it because appellant did not have any money in the bank and had not had any in said bank since the 30th day of August, 1937, almost two years. He did not pay for the cattle and had not paid for them at the time of the trial. Appellant did not testify or offer any affirmative defense.

It is our opinion that the evidence is sufficient to sustain the conviction under Art. 1413, P. C. The testimony demonstrates that appellant intended to cause the owner of the cattle to believe, and he did believe, that appellant had all of the money except a few dollars in the bank to pay the check. This was false and appellant knew it to be false when he made the statement. Did he at the time intend to deprive the owner of the value of the cattle and to appropriate them to his own use and benefit? It certainly appears so from the testimony because he told Willeke that he had all but a few dollars in the bank to take care of the check and that the required remainder of a few dollars would be in the bank when the check would be presented for payment on August 22nd. This statement by the appellant was false because he did not at the time, nor did he for two years next preceding the time he so made said statement to Willeke, have any money in the bank to his credit. It is quite evident that said false statement induced Willeke to turn the cattle over to appellant; and it also appears from the record

that appellant, at the time, intended to appropriate the cattle to his own use and benefit and to deprive the owner of the value thereof. We think the evidence is ample to sustain the conviction.

Appellant next complains of the court's charge in failing to instruct the jury that unless they should find and believe from the evidence beyond a reasonable doubt that there was some false pretext resorted to by appellant as to some past or present fact which induced the owner to part with his property, etc. to acquit him. It occurs to us that appellant was entitled to such an instruction or one of like import. The court, in paragraph 4 of his charge, instructed the jury generally upon the law of ordinary theft, and in paragraph 5 instructed them as follows: "You are further instructed that in order to convict the defendant of the crime of theft in this case you must be satisfied from the evidence, beyond a reasonable doubt, that he not only did appropriate the one head of cattle to his own use and benefit as alleged in the indictment, but you must further find and believe beyond a reasonable doubt that the intention of the defendant to defraud the owner of the value thereof, (if you have found that such intent existed) existed at or before, the taking of said one head of cattle."

Thus, it will be noted that no instruction was given to the jury upon the issue of a false pretext which was an issue in the case. If the owner of the property sold the cattle to appellant on credit and did not rely upon the false statements and representations, it would not, in our opinion, constitute theft.

The prosecution in this case was based upon Art. 1413, P. C. The facts bring the case clearly within the purview of said article of the statute and appellant was entitled to a fair and adequate instruction of the law applicable thereto. See Maxwell v. State, 134 Tex. Cr. R. 314; Barnett v. State, 43 S. W. (2d) 449 (452). For a comprehensive instruction on the subject, reference may be had to Segal v. State, 265 S. W. 911, 98 Tex. Cr. R. 485; Hawkins v. State, 58 Tex. Cr. R. 407. In our opinion, the court should have responded to appellant's timely objection and reformed his charge accordingly. The failure to do so deprived appellant of the right to have the law fairly and adequately applied to the case as made by the evidence. Therefore, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

The State has filed a motion for rehearing relying on that part of Art. 1413 P. C., which is italicized by us. "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, *but if the taking though originally lawful, was obtained* by any false pretext, or *with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and same is so appropriated, the offense of theft is complete.*"

The record shows that this case was tried on the theory now urged by the State in the motion for rehearing; that is, regardless of any false pretext, if appellant came into possession of the property with the owner's consent, but with the intent at the time to deprive the owner of its value, and to appropriate it to the use and benefit of appellant and the same was so appropriated, the offense of theft was complete.

As we understand the facts as made by the State the owner was induced to part with both the possession and title to the property by the false pretext of appellant that he had sufficient money in the bank to cover the check given in payment for the property except a small amount which would be placed in the bank within two days, when in truth he had no funds at all in the bank and had none for about two years prior to drawing the present check. The owner makes it clear from his testimony that he would not have sold the cattle on credit. If no false pretext was resorted to by appellant then this transaction was a pure case of purchase and sale in which both possession and title passed to appellant, but the court declined to so tell the jury by refusing to respond to the objections to his charge as pointed out in our original opinion.

It is apparent from a review of the cases in which present Art. 1413 P. C., has been under consideration that in its application the court has sometimes used general expressions which have caused confusion, and yet when considered in connection with the facts of each partciular case the holding of the court has been generally uniform. In Segal's case, 98 Tex. Cr. R. 485, 265 S. W. 911, the State contended for the very construction of said Art. 1413 now again urged by the State. Segal bought on a credit a quantity of merchandise. *No false pretext* was used.

The owner delivered both the possession and *the title* to Segal. He sold the merchandise and failed to pay for it. The State contended that although false pretext was absent, yet under the second provision of Art. 1413 if at the time Segal procured possession of the merchandise he had the intent to deprive the owner of the value thereof, and to appropriate it to Segal's own use and benefit, and did so appropriate it, he would be guilty of theft. The opinion in the case mentioned reveals that Judge Morrow made an exhaustive examination of the question and reviewed many authorities. Three propositions are stated in the opinion, which we here reproduce, italicizing the pertinent portions.

"(1) One who, with a preconceived design to fraudulently deprive the owner of personal property, obtains *possession* of it, and makes use of the *possession* to convert the property to his own use, would not be excused from a charge of theft by the fact that the owner consented to part with the *possession* of his property. This we understand to be a general rule often applied in our own and other jurisdictions."

"(2) When the owner of property *voluntarily* parts, *not only with its possession, but with the title to the property as well, the offense is not theft.* It may, under certain circumstances, be swindling; but one having *both the possession and the title* to property *does not, by converting it, become guilty of theft, notwithstanding the acquisition with fraudulent intent.*

"(3) This uniform construction of the statute has prevailed, notwithstanding the re-enactment of the statute unchanged in the several revisions of the Code, thereby giving to the statute legislative sanction of its judicial interpretation. The proposition that the acquisition of property upon a fraudulent pretext by the receiver or upon his fraudulent intent will not support a conviction for theft if it appears that the owner intended to part with both possession and title is declared by the courts and text-writers." Many authorities are cited in the opinion supporting each of the three propositions.

The opinion concludes in the following language: "(4) The evidence in the instant cases shows that the goods in question were sold to appellant on credit. They were delivered to him without reservation of title. The intent of the owner was manifestly to part with both the possession and title of the goods, and to vest the ownership in the appellant. They became his property to do with them as he pleased. Under the precedent cited, he cannot be held guilty of theft."

So we say in the present case, if there was no false pretext,— and the jury had a right to determine that issue—the owner parted with both the possession and title to his property and appellant—in the absence of a false pretext—would not be guilty of theft.

In Quitzow v. State, 1 Tex. Cr. App. 65, decided in 1876, the very statute which is now Art. 1413 P. C. was under construction. This was before present Art. 1429 P. C.—theft by conversion—was enacted, which came into the code in 1887. Quitzow hired a horse to be used, as he represented, to go to a certain place for a certain purpose, and was to return the horse the same or the next day after hiring it. This he did not do, but so used the horse as to show a conversion to his own use. In construing what is now Art. 1413 P. C. Judge White quotes with approval from 1 Bishop on Cr. Law, Sec. 1017, as follows: " 'If a man, meaning to steal his neighbor's goods, fraudulently prevails on his neighbor to deliver them to him, under the understanding that the property therein is to pass, he commits neither larceny nor any other crime by the taking, unless the transaction amounts to an indictable cheat. But if, with the like intent, he fraudulently gets leave to take the possession only, and takes and converts the property in the goods, he becomes guilty of larceny; because, while his intent is thus to appropriate the property, the consent which he fraudulently obtained covers no more than the possession.' "

In its motion for rehearing the State relies on Nichols v. State, 109 S. W. (2d) 1057 and Newcomb v. State, 131 Texas Cr. R. 30, 95 S. W. (2d) 456. There are some general expressions in those two opinions that may be somewhat confusing, but when the facts are considered the result in each of the cases mentioned is not out of line with the holding in Segal's case, nor with anything that has been said in this opinion. Nichols negotiated with one Copeland to purchase certain cattle and the price was agreed upon. After the cattle were loaded in a truck and driven away Nichols then told Copeland he did not have the monty then to pay for the cattle, but had made arrangements to have the money in the bank on the following morning. Under the facts both the possession and title to the property passed to Nichols, and he made no false statement with reference to the matter until after the cattle had been received by him and had left the possession of Copeland. In Newcomb's case Douthit was the owner of certain cottonseed and had made arrangements with Newcomb and other parties to haul the cottonseed and deliver them at a certain place. They did

get two loads of seed and delivered them according to their agreement with Douthit. Before they got the third load Newcomb and a co-principal agreed to get the third load of seed and appropriate them to their own use. The case was decided upon the proposition that appellant had authority to take the seed and haul them where directed by Douthit, and that if before taking possession of the third load they had decided to take them to another place and there sell them and appropriate the money that they had no authority from Douthit to thus handle the seed, and thus had no authority from Douthit to take possession of the property. It is apparent that Douthit never parted with the title to the seed, but only agreed to part with the possession thereof in order that Newcomb and his co-principal might take the seed to the place directed; so the result of the holding in the Nichols case and in the Newcomb case is in line with the holding in the original opinion in the present case.

It is our view of the law that in determining whether the offense of theft has been committed under the provisions of Art. 1413 P. C. that it should always be kept in mind to determine if the owner of the property parted with the title as well as the possession, especially so in the absence of false pretext. If this be done we think less confusion would arise in cases of this character.

We desire to make it clear that under some circumstances the offense of theft would be complete although the owner of the property parts with both the title and possession thereof, if he is induced to do so by some false pretext, and the other elements are present which constitutes the offense. One reason is that the false pretext may be such that it involves future happenings and would not support a swindling charge. Illustrative, see Contreras v. State, 118 Tex. Cr. R. 626, 39 S. W. (2d) 62; White v. State, 123 Tex. Cr. R. 282, 58 S. W. (2d) 530; Sherman v. State, 124 Tex. Cr. R. 273, 62 S. W. (2d) 146; Hoovel v. State, 125 Tex. Cr. R. 545, 69 S. W. (2d) 104; Haley v. State, 127 Tex. Cr. R. 177, 75 S. W. (2d) 272; Baldwin v. State, 132 Tex. Cr. R. 427, 104 S. W. (2d) 872; Lovine v. State, 136 Tex. Cr. R. 32, 122 S. W. (2d) 1069.

We have written at some length on the State's motion for rehearing in an effort to clarify if we could the questions involved, and it follows from what we have said that we remain of the opinion that the case was properly disposed of in our original opinion.

The State's motion for rehearing is overruled.

GRAVES, Judge (Dissenting).

This cause was heretofore reversed and remanded by this court on the sole proposition that the trial court was in error in failing and refusing to charge the jury, at appellant's request, on the law governing a theft by means of a false pretext.

Art. 1413, P. C. reads as follows: "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, *but if the taking, though originally lawful, was obtained* by any false pretext, or *with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete.*"

It will be observed that a conviction may be had under the above statute in two ways, one being the obtaining of the consent of the owner of the property by means of some false pretext, and the other being the acquisition of the property with the owner's consent, but at the time of obtaining such consent of the owner there existed in the mind of the person so acquiring such property the intent to deprive the owner thereof of the value of the same, and the further appropriation thereof.

The proof of either one of these means to the satisfaction of the jury would be sufficient grounds for the upholding a judgment for theft.

Appellant objects to the charge of the trial court, and sets up the same in a bill of exceptions, as follows: "Defendant objects to said charge for the reason that same does not advise nor inform the jury that they cannot convict the defendant unless they find and believe from the evidence that it was from some false pretext on the part of the defendant as to some past or present fact, upon which prosecuting witness, Antone Willeke, relied and but for which he would not have parted with his property."

Appellant also admits in his brief that there are two separate and distinct methods set forth in Art. 1413, supra, in which the crime of theft can be committed. We quote that portion of the brief: "It seems that this appellant was indicted and tried under that portion of the statute underlined above, that is, 'with any intent to deprive the owner of the value thereof'. Appellant admits at the outset that if this case was tried upon the underscored portion of the statute, possibly his proposition is not well taken as is reflected in appellant's bill of exception number one,

for it seems that under that portion of the statute, it is not necessary to show any false pretext, but a mere taking with the intent to deprive the owner of the value thereof."

It appears from the court's charge that this cause was tried on the second alternative method of committing the crime of theft, although the taking was had with the owner's consent, and the court's charge to the jury evidences the same in the following language: "You are further instructed that in order to convict the defendant of the crime of theft in this case you must be satisfied from the evidence, beyond a reasonable doubt, that he not only did appropriate the one head of cattle to his own use and benefit as alleged in the indictment, but you must further find and believe beyond a reasonable doubt that the intention of the defendant to defraud the owner of the value thereof, (if you have found that such intent existed) existed at or before the taking of said one head of cattle."

I grant that possibly both elements of the commission of this offense were presented to the jury in the testimony, yet the mere fact that the State saw fit to pursue the path outlined by the last alternative set forth in Art. 1413, supra, would certainly not force it to also pursue the method of committing the same offense as set forth in the first portion of such article. The State evidently did utilize a false statement by appellant relative to his bank account in order to show a present intent to appropriate the property unlawfully at the time he obtained possession thereof. And it is further of note that at appellant's instance the trial court gave a charge on circumstantial evidence.

The facts as herein presented might have been classified as coming under the statute denouncing the crime of swindling also, but I do not think the State should have been compelled to elect to prosecute the same under such statute, but could use its own judgment in selecting any one of the violated statutes or offenses that it thought applicable to the facts.

It seems clear to me that the false pretext of having certain money in the bank could have been used for the purpose of showing an instant intent to deprive the owner of the cattle and thus establish an offense under the second alternative of Art. 1413, supra, or had the State so desired, it could have been used as the predicate for the conviction herein; but in no event do I think that because there are present in the facts two alternative ways of committing the denounced offense of theft, that it was incumbent on the court to charge the jury on both phases thereof; nor do I also think that the appellant should be allowed

to defend on the alternative theory not presented nor relied upon by the State. That two such methods of committing theft are included in Art. 1413, P. C., we have heretofore held in Davenport v. State, 78 S. W. (2d) 608, in the following language: "The statute denouncing the offense embraces two modes of committing the crime, namely, obtaining the property by false pretext and obtaining the property with intent to deprive the owner of the value of the property in question. The present prosecution is based upon the latter. The distinction between a prosecution under this statute and others denouncing theft is emphasized in many decisions of this court. Among them is Segal v. State, 98 Texas Cr. R. 485, 265 S. W. 911, 35 A. L. R. 1331. See Vernon's Ann. Texas P. C., Vol. 3, Art. 1413, and notes thereunder on page 23 of 1934 Cumulative Annual Pocket Part. See, also, Speer v. State, 58 S. W. (2d) 95; DeBlanc v. State, 118 Texas Cr. R. 628, 37 S. W. (2d) 1024."

The only further question presented to us is the sufficiency of the evidence to sustain a finding that the appellant at the time of acquiring possession of the cattle had the intent at such time to deprive the owner of the value thereof, and to appropriate same to his own use and benefit. In this connection, I think the statement made at such time to the owner of the cattle relative to certain moneys had in the bank by appellant, and the proven falsity of such statement, would go far to show his present intent to obtain these cattle unfairly from their owner, and under the law of circumstantial evidence I am impressed with the fact that the jury was warranted in saying that when appellant told the owner of these cattle that he had funds in a certain bank practically sufficient to cover the amount, lacking a few dollars, when he had no such funds, and had not had same therein for more than two years, this was cogent evidence going to show that appellant at such time had the intent to deprive the owner of the value of $1119.00 worth of cattle.

The latter portion of Art. 1413, P. C. either means something or nothing, and to give such article the construction set forth in the opinion of Judge Hawkins entirely destroys the efficiency and meaning of such latter portion of such article, and same would be useless. When appellant told Willeke that he, appellant, had the sum of $1119.00, lacking a few dollars, in a certain bank, and obtained possession of about 43 head of cattle, it seems to me that the fact that he had no such amount of money in such bank, and had had no money at all in such bank for more than two years, brought this case clearly within

the provisions of the latter part of such article 1413, P. C., as follows: "* * * *or with any intent to deprive the owner of the value thereof* and appropriate the property to the use and benefit of the person taking," etc. I think this latter provision just above quoted is an additional method of committing the offense of theft, and either conveys such a meaning or means nothing.

We are not authorized to think that the Legislature wrote a meaningless thing into the law, but such has been carried in the Code for many years and through many revisions, and I think same should be given effect as a means of committing theft. I think the trial court was correct in utilizing this portion of the statute in this instance, and therefore respectfully enter my dissent herein.