## BOMAR v. INSURORS INDEMNITY & INS. CO.

### No. 14296.

Court of Civil Appeals of Texas. Dallas.
Dec. 15, 1950.

Rehearing Denied March 16, 1951.

Chrestman, Brundidge, Fountain, Elliott & Bateman, Dallas, for appellant.

Strasburger, Price, Holland, Kelton & Miller, Mark Martin and Royal H. Brin, Jr., all of Dallas, for appellee.

CRAMER, Justice.

Appellant, as insured, filed this action against appellee, as insurer, to recover the reasonable cash market value of a 1949 Pontiac automobile alleged to have been stolen from her while her automobile theft policy was in full force and effect. The trial was before the court without a jury and resulted in judgment for appellee insurer, from which judgment this appeal has been duly perfected. Appellant briefs two points, the first asserting error of the trial court in holding that "the taking of 'Insured's' automobile by false pretext with attempt to appropriate it, and the appropriation thereof, was not theft." The second point asserts error "in holding that the party obtaining possession of the insured automobile by fraud was in legal possession under a conditional sales contract, so as to relieve the Insurer of liability under a clause in the policy excluding loss caused by a person in lawful possession under a conditional sales agreement."

Appellee counters by two points asserting (1) the "trial court was justified in finding that plaintiff failed to prove by preponderance of the evidence the occurrence of the transaction alleged to constitute the theft"; and (2) the facts alleged, if true, "would not constitute a theft under the terms of the policy." Such points necessitate a review of the evidence in detail. But one witness testified, to wit, Frank

Wallace, an uncle of appellant. His evidence was that appellant placed the automobile with him for sale and at the same time delivered to him a title certificate signed in blank to be filled in at time of sale. He advertised the automobile for sale and a man who identified himself as James E. O'Boyle, approached him stating he was employed in the neighborhood and had read his ad; had looked at the automobile and wanted to purchase it but that he first wanted to talk with his wife and asked if he could reach him that afternoon. Wallace gave him his home phone number. That night a woman called him and identified herself as Mrs. James O'Boyle, stating to him that they desired to buy the automobile and that they had $2,000 in money in the Oak Cliff bank and had talked to the automobile loan department of such bank and they were confident the bank would loan them the other $750 and asked where they could see him next day. Wallace explained that his office was not open on Saturday but he would meet them at his office anytime. The lady told him 11:30 A.M. Saturday. Wallace waited at his office and no one showed up; however, the same woman called him by telephone at 11:50 A.M. saying she would be right down with a check, but for him to wait a minute, she wanted to talk to Mr. Crabtree who, she said, was cashier of the American National Bank of Oak Cliff. After a short interval a lady who identified herself as Secretary to Mr. Crabtree asked him for the motor number of the automobile as well as other information necessary to make a loan, advising him that they would loan Mr. and Mrs. O'Boyle $750, and that her check for $2,750 was good. She further said that she knew of his Company and requested him to hold the $2,750 check until the certificate of title cleared, which he agreed to do. Then a man who identified himself as James E. O'Boyle got on the phone and told Wallace he would be down in a few minutes and a little later he did arrive at Wallace's office and there delivered to Wallace the $2,750 check which was signed by Mrs. James E. O'Boyle, which purportedly had the "OK" of F. W. Crabtree thereon. On a Monday, nine days thereafter, Wal-

lace called the bank and asked if the title had cleared so he could cash the check. He then learned that they had no record of the transaction. Neither Mr. Crabtree, nor his secretary, had any knowledge of the transaction. Mr. Crabtree's signature on the check was a forgery. The check was deposited by Wallace, but the bank returned it, with the notation "Unable to locate the account." Wallace then went to the address on the check and found it to be that of a tourist court; also learned that James E. O'Boyle had registered there, but had checked out shortly after noon on the Saturday he obtained title certificate, filled in by Wallace, as well as the possession of the automobile. Also that, so far as their records showed, there was no Mrs. James E. O'Boyle registered with him. Wallace then filed a complaint with the District Attorney and appeared before the grand jury and gave evidence against O'Boyle. The automobile was later located in Los Angeles. The title where the automobile was located had been transferred to such dealer. Wallace, on cross-examination, testified that he thought the check was good when he accepted it and delivered the automobile to O'Boyle conditioned upon the check being good. Wallace, on cross-examination, testified as follows:

"Q. You were not taking the check as payment regardless of whether the check was good or not? A. No. If there had been any question in my mind about the check being good, I wouldn't have consummated the deal with him.

"Q. And it was your idea in dealing with him that if it were not any good the thing was all off, is that right? A. Sure."

Thereafter it appears from the evidence that James E. O'Boyle, or the person who used that name, had, by a cleverly designed scheme, obtained possession of and title to the automobile by fraud with a "hot" check. Articles 1410 and 1413 of our Penal Code are as follows: Art. 1410. "'Theft' is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropri-

443

ate it to the use or benefit of the person taking." Art. 1413. "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." The coverage under the policy was in paragraph "G-1—Theft" (Broad Form). Section M under the exclusions which limit the above paragraph G-1—Theft coverage is as follows: "Under the coverages, D, G-1 and G-2, to loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance."

▇ Under appellee's first counter proposition, it contends that the trier of the facts can find against the uncontroverted evidence of an interested witness, and can render judgment directly contrary thereto. We agree with appellee that the court could disbelieve the evidence of an interested witness, provided his evidence is not corroborated by written instruments, or other evidence consistent therewith. In this case Wallace *is* corroborated by the check signed by Mrs. O'Boyle, with the endorsement thereon "In payment of a 1949 Pontiac coupe, motor number K8RH4053, rubber stamped "Cashier," signed "F. W. Crabtree," and stamped "July 9, 1949" and now has attached thereto the Bank's standard printed slip, dated "July 25, 1949," with a check mark before the wording "Unable to locate account." A careful reading of the testimony of Wallace would not raise the least suspicion as to its correctness, but on the contrary is consistent in every detail. We are therefore of the opinion that the rule asserted by appellee is not applicable to this case. The counter point is overruled. The other points by appellant and appellee raise the question as to whether or not there was a theft of the automobile within the coverage of the policy, not excluded by the exception above quoted. The word "Theft" as used in the policy is confined to the legal meaning given such term by our courts.

The appellant relies on the Texas cases of Automobile Underwriters Co. v. Rhinehold, Tex.Civ.App., 255 S.W. 1116; King v. State, Tex.Cr.App., 213 S.W.2d 541; Lovell v. State, 48 Tex.Cr.R. 85, 86 S.W. 758; and Security Ins. Co. v. Sellers-Sammons-Signor Motor Co., Tex.Civ.App., 235 S.W. 617. Each of these cases is distinguishable on the facts. Each involves the transfer of possession only and not transfer of the title as such.

In Automobile Underwriters Co. v. Rhinehold, supra, possession was given to the prospective purchaser in order that he might try out the automobile. The court stated the facts as follows: "The testimony showed that the automobile was placed in the possession of one Lincoln D. Odle, by appellee, to be carried by the latter to Austin and tried out on the hills near or surrounding that city; that Odle pretended that he was contemplating buying, and took it off with a promise that he would bring it back at 6 p. m. He started to Austin in the early morning, at or about 6:30 a. m. He never returned, but went on to Missouri with the car. * * *" [255 S.W. 1117.]

In King v. State, supra, the court in the course of the opinion stated the nature of the possession, as distinguished from title, as follows: "* * * In the case of Dix v. State, supra, the injured party intended to part with the title to the property as well as its possession while in the instant case the injured party retained the title and parted only with the possession of the automobile." [213 S.W.2d 543.]

The Dix v. State case referred to is reported in 136 Tex.Cr.R. 296, 124 S.W.2d 998.

In the Lovell case, supra, the defendant by false pretext secured money from one Copeland to be paid as a bribe to a county attorney who, for such consideration, was to dismiss a criminal case against Copeland. Under such facts Lovell secured possession, not title, to the money.

In Security Ins. Company v. Sellers, etc., supra, the opinion recites: "* * * The possession so delivered was in a very qualified and limited sense; it was intended and understood to be temporary only, with the distinct recognition of the plaintiffs' right to retake the property at any time, and at all events to be only of a temporary character." [235 S.W. 621.]

Appellant in her reply to appellee's brief cites the case of Johnson v. State, 144 Tex. Cr.R. 392, 162 S.W.2d 980, 982. As we construe this case and the cases cited therein it applies where money is involved. There the court said: "The fallacy relative to the distinction between swindling and theft by false pretext being the delivery or not of title, has long since been departed from by this court in the following cases: De Blanc v. State, 118 Tex. Cr.R. 628, 37 S.W.2d 1024 (and others). In De Blanc v. State, supra, Judge Morrow writes an exhaustive opinion on the difference between theft and swindling, and discusses many cases". The court said in the course of the opinion that "intent is not the sole distinction" between theft and swindling. However, the court did hold specifically, "It is obvious that the owner did not intend to vest the title to the property in the appellant." [118 Tex. Cr.R. 628, 37 S.W.2d 1027.] Judge Morrow followed the rule that the representation of an existing fact is necessary to a conviction of swindling, while the representation of a future fact is necessary to theft by false pretext. In Rumfield v. State, 139 Tex.Cr.R. 599, 141 S.W.2d 630, 632, syls. 7–8, Judge Hawkins, in the opinion on motion for rehearing, stated such rule as follows: "It is appellant's further proposition that if he is not guilty of embezzlement he should have been prosecuted for theft by false pretext and not swindling. It is sometimes difficult to distinguish between those two offenses. In swindling the false representation must be as to an existing fact or to a past event. Such are the facts here, false representations as to a purchase of stock already consummated; whereas, in theft by false pretext the representations may and usually do involve future promises upon which reliance is placed in parting with property."

Appellee's cases, Segal v. State, 99 Tex. Cr.R. 485, 265 S.W. 911, 35 A.L.R. 1331, Dix v. State, 124 S.W.2d 998, Akers v. Scofield, 5 Cir., 167 F.2d 718 (Texas case), are in point, and state the correct rule applicable here.

The case before us has both of the elements which make the offense (by the person who represented himself to be O'Boyle) that of swindling,—since both title and possession passed, and the making of a false representation of an existing fact, as distinguished from a future promise. This would exclude a conviction of theft by false pretext in a criminal case.

▮ Therefore the coverage in the policy was not broad enough to cover appellant's loss, and the judgment of the court below must for that reason be affirmed.

BOND, Chief Justice (dissenting).

By a carefully designed and cleverly executed fraudulent pretext, inducing the belief that the purported purchaser of insured's automobile had made arrangements with a bank whereby a check given for the purchase price of the automobile would be paid when title cleared with the State Highway Department, one posing as James E. O'Boyle obtained possession of the insured's automobile, and a certificate of title to it, with intent to appropriate the property to his own use and benefit, and did so appropriate it.

The insured carried with appellee a "comprehensive" policy of insurance, including "Broad Form" of theft coverage, insuring against loss by theft, except "loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance."

· The majority holds that the loss was not covered by the policy because the thief obtained not only possession of the automobile, but also the title to the same, perforce of a certificate of title; and because the misrepresentations constituting the fraudulent pretext were of existing facts, as dis-

tinguished from representation as to what would happen in the future. Believing that the holding of the majority is without support in either reason or authority, I respectfully dissent, and indicate here briefly the grounds upon which I believe the loss is clearly within the terms of the policy.

First: The loss comes squarely within the definition of theft by fraudulent pretext as defined by Art. 1413, of the Penal Code. Under Arts. 1410–13, P.C., if corporeal personal property belonging to another is taken by fraudulent pretext with intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking it, the offense of theft "is complete." "Under the statute referred to in the preceding section (Pen.Code Art. 1413), a person is guilty of theft if by false pretext he obtains possession of the property of another, intending at the time to deprive the owner of its value and to appropriate it to his own use and benefit, and does so appropriate it. The constituent elements of theft by false pretext are (1) obtaining the property by means of a false pretext, (2) the statutory intent, and (3) the appropriation." 41 Tex.Jur., § 46, p. 68.

There is no authority, as I view the authorities, for the holding of the majority that the misrepresentations or fraudulent pretext dealt with in this statute must be with respect to future happenings. There are authorities holding that representations of future happenings will suffice; not that they are necessary to make out a case under this Article. 41 Tex.Jur., § 46, p. 68; Roe v. State, 140 Tex.Cr.R. 387, 144 S.W.2d 1104; Johnson v. State, 144 Tex.Cr.R. 392, 162 S.W.2d 980. However, it might be noted that the representation that the check would be honored when title cleared is a representation of what would happen in the future; so that in no event could the majority opinion be upheld on the ground that the representations dealt only with existing facts. Therefore, since the facts detailed in the majority opinion make out all of the elements of the offense of theft under Art. 1413, P.C., the issue is whether the fact of the fraudulent obtaining of the title certifi-

cate to the automobile destroyed the case of "theft by false pretext."

It will be observed that the statute refers merely to a taking of *personal property* by fraudulent pretext. And it was long ago recognized by the Court of Criminal Appeals that evidence of title obtained by fraudulent pretext did not prove that the property was not so obtained. In Anderson v. State, 77 Tex.Cr.R. 31, 177 S.W. 85, at page 88, Judge Harper said: "If, however, the facts in this case should be held to constitute swindling under article 1421, yet it cannot be gainsaid that the facts would authorize a jury to find that the possession of the hogs was obtained by fraudulent pretext, with the intent to deprive the owner of their value, and with the intent to appropriate the property to his own use and benefit, and under such circumstances he would *also be guilty of theft by fraudulent pretext*". (Emphasis supplied.)

Notwithstanding this sound observation, the Court of Criminal Appeals many times reversed convictions where the State in effect overproved its case by showing that the thief obtained both title and possession, and was, therefore, guilty of swindling. But in 1943 the Legislature amended Art. 1549 of the Penal Code, Vernon's Ann.P.C. art. 1549, to provide that: "Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner that the acquisition thereof constitutes both swindling and some other offense, the party thus offending shall be amenable to prosecution at the state's election for swindling or for such other offense committed by him by the unlawful acquisition of said property in such manner."

Thereafter, the Court of Criminal Appeals in King v. State, Tex.Cr.App., 213 S.W.2d 541, 544, on motion for rehearing, sustained a conviction for theft under facts which cannot be distinguished from the facts here upon the ground that under the provisions of Art. 1549, above quoted, "* * * the material inquiry is whether the facts show the commission of that offense, it being immaterial whether the facts also show the crime of swindling.

Appellant's argument that the instant facts show the crime of swindling is therefore unavailing." The Court reiterated and emphasized its holding in Dixon v. State, Tex. Cr.App., 215· S.W.2d 181, 183, by this definite announcement: "In King v. State, Tex.Cr.[App.], 213 S.W.2d 541, we held that under Art. 1549, P.C., as amended, Vernon's Ann.P.C. Art. 1549, the State may now prosecute either for swindling or theft by false pretext, *under a state of facts showing both offenses.*" (Emphasis supplied.)

The basis of the decisions in King v. State, and Dixon v. State, supra, show, too, that the former decisions of the Court of Criminal Appeals, cited by the majority, were not based on the theory that theft by fraudulent pretext was not made out where the intent was to pass title, but solely upon consideration of matters of criminal procedure. Hence, it is clear that a conviction for theft by fraudulent pretext under facts detailed in the majority opinion would be upheld under the present decisions of the Court of Criminal Appeals. Thus, insofar as the application of Civil Law is concerned there never was any reason for a holding that a theft by fraud was not made out, if title as well as possession were obtained.

Second: The policy must be construed in the light of Texas Law as to what constitutes theft. As noted above, the policy is a Texas Standard Form of automobile policy. Under the "comprehensive" coverage, it insures against loss by theft (Broad Form) except "loss due to conversion, embezzlement or secretion by any person in lawful possession of the automobile under a bailment lease, conditional sale, mortgage or other encumbrance." "Where a policy insures against theft, excepting from its coverage loss of a certain type, such as embezzlement by a mortgagor or a vendee in possession, losses not falling within that specifically excepted class are covered, so as to render the insurer liable for embezzlement by other persons." Appleman on Insurance, Vol. 5, § 3212.

Therefore, this Texas Standard Form must be considered to have been drawn to cover every species of theft defined by the statute of the State of Texas, except the risk specifically excluded. The facts here come clearly within that coverage.

The law of the state of decision on what is theft is the basis of the ·decisions cited by appellant as supporting her position, to wit: Central Surety Fire Corporation v. Williams, 213 Ark. 600, 211 S.W.2d 891; Brady v. Norwich Union Fire Ins. Soc., 47 R.I. 416, 133 A. 799; Nugent v. Union Automobile Ins. Co., 140 Or. 61, 13 P.2d 343; Champion v. Chicago .F. & M. Ins. Co., 104 N.J.L. 554, 141 A. 794; Hill Howard Motor Co. v. North River Ins. Co., 111 Kan. 225, 207 P. 205, 24 A.L.R. 736, and Gaudy, Inc., v. North Carolina Home Ins. Co., 145 Wash. 375, 260 P. 257.

It is also the basis of the decisions cited by appellee to the contrary, to wit: Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115; Royal Ins. Co. v. Jack, 113 Ohio St. 153, 148 N.E. 923, 46 A.L.R. 529; Illinois Automobile Ins. Exchange v. Southern Motor Sales Co., 207 Ala. 265, 92 So. 429, 24 A.L.R. 734; Aetna Cas. ·& Surety Co. v. Salyers, 294 Ky. 826, 172 S.W.2d 635, and others.

The Supreme Court of Arkansas in Central Surety· Fire Corp. v. Williams, supra, analyzes the decisions cited by both appellant and appellee, and concludes that under statutes comparable to the Texas statute loss of title and· possession is covered by a theft policy.

A good illustration of the effect of State statutes on the construction to be given a policy is found in a comparison of the de·cision relied on by appellee in Van Vechten v. American Eagle Fire Ins. Co., supra, and the decision by the same court in Block v. Standard Ins. Company, 292 N.Y. 270, 54 N.E.2d 821, 152 A.L.R. 1097. In the first case the insurer was held to have no liability for loss of a car left with a garageman who appropriated it, because "Theft under this contract is theft as common thought and common speech would now imagine and describe it." [239 N.Y. 303, 146 N.E. 433.] In the case decided by the same court after the enactment of the

"joy riding" statute, the insurer was held liable, where a car was temporarily taken for such purpose, on the ground that by the enactment of such statute, such acts became larceny within "the ordinary meaning which 'the average policyholder of ordinary intelligence, as well as the insurer, would attach to it.'" [292 N.Y. 270, 54 N.E.2d 822.]

Therefore, since by Texas Statutes and decisions the instant defrauder was guilty of theft, the policy written with reference to those statutes was obviously designed to cover the loss sustained.

Third: Whether an innocent third party purchaser of the automobile would be protected is not determinative of whether a theft was committed. Appellee urged by argument on motion for rehearing that under the circumstances here an innocent third party would be protected in his purchase of the car from the wrongdoer; and, therefore, that the transaction could not be a theft. The affect of such contention is to say that the statute defining the transaction as a theft is void or inoperative as violative of the doctrine of innocent purchaser.

It is clearly within the province of the Legislature to say what acts shall constitute theft. It may say, as it has in some states, that the temporary taking for "joy riding" shall be larceny; and if it does, such acts are covered by a theft policy. Block v. Standard Ins. Co., supra. It may say, as it has in Texas, that a taking by fraudulent pretext is theft; and, if it does, an insurance policy written with reference to such a statute covers such acts, regardless of what rights the insurance company may have against third parties. As applicable to this situation, the doctrine of innocent purchaser is one of equitable estoppel, involving the question of whether or not the owner has put himself in a less equitable position before the court than the innocent purchaser. See McKinney v. Croan, 144 Tex. 9, 188 S.W.2d 144. The doctrine was not designed for the protection of insurers, and cannot be invoked by insurers as grounds for holding that what the statute defines as theft for the

purpose of convicting thieves is not a theft within the meaning of an insurance policy.

It is the contention of appellee that the certificate of title to the automobile in question which the evidence shows was obtained by the same fraudulent pretext, passed title; hence the loss to the owner does not come under the statute of theft. The Ceritficate of Title Act, as amended, and now Article 1436-1, Vernon's Texas Statutes 1948, Penal Code, deals with motor vehicles only, and its scope and purpose are disclosed in the many sections thereof and in the emergency clause. Section 1, in part, reads: "This Act shall be referred to, cited and known as the 'Certificate of Title Act,' and in the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles * * *, and the provisions hereof, singularly and collectively, are to be liberally construed to that end." In the case of Bank of Atlanta v. Fretz, Tex.Sup., 226 S.W.2d 843, 849, our Supreme Court tersely said: "The spirit and purpose of this law is to prevent fraud; not to encourage it. It was not the intention of the Legislature by this Act to invalidate liens validly acquired in States which do not have a similar law, and this is especially true in the event a vehicle covered by a lien is wrongfully, without the knowledge or consent of the lienholder, removed from the State where the lien was acquired and brought to this State, and the owner by false and fraudulent representations obtains a certificate of title showing that no lien exists against the vehicle, so that he is thereby enabled to transfer the vehicle to an innocent purchaser for value without notice of the lien." Manifestly, if the certificate of title fraudulently acquired would not deprive the lienholder of his valid subsisting lien on the automobile, under what reason and authority may such certificate deprive the owner in fee of his title and possession, when both title and possession were acquired by the same fraudulent pretext? Fraud vitiates the entire transaction,— the title and possession—and constitutes the element of theft by false pretext, com-

448

ing under the terms of the policy in question. "No other conclusion could reasonably be given to the transaction in question. In Deahl v. Thomas, Tex.Civ.App., 224 S.W.2d 293, 294 (ref. n. r. e.), the Amarillo Court of Appeals held (Syl. 8): "In action to try title to an automobile, evidence sustained finding that sale of automobile by plaintiff to dealer was conditioned on payment of draft for purchase price and that, since purchase price was never paid by dealer, title to automobile did not pass out of plaintiff." So, in the case here title never passed out of the appellant by the fraud and deception inducing the execution of the certificate of title and delivering possession of the automobile.

Appellant's motion for rehearing should be sustained; the judgment of the trial court should be reversed and judgment here rendered for appellant.